Page 1

IN THE CIRCUIT COURT

OF

MACON COUNTY, ALABAMA

JERRY M. BLEVINS,

     Plaintiff,

vs.                          CIVIL ACTION AT LAW
                             CASE NO. CV-2007-900018

CITY OF TUSKEGEE, et al.,

     Defendants.

* * * * * * * * * *

DEPOSITION OF JERRY MICHAEL BLEVINS, taken pursuant to stipulation and agreement before Mallory M. Johnson, Certified Court Reporter and Commissioner for the State of Alabama at Large, in the Law Offices of Gray, Langford, Sapp, McGowan, Gray, Gray & Nathanson, 108 Eastside Street, Tuskegee, Alabama, on Thursday, February 27, 2008, commencing at approximately 11:55 a.m.

* * * * * * * * * *

DEFENDANT'S
EXHIBIT
1

PENGAD 800-631-6989

JERRY M. BLEVINS v. CITY OF TUSKEGEE, ET AL.                              2/27/2008
DEPOSITION OF JERRY BLEVINS

2 (Pages 2 to 5)

Page 2

```
 1            APPEARANCES
 2   FOR THE PLAINTIFF:
 3   Mr Jerry M. Blevins
     LAW OFFICE OF JERRY BLEVINS
 4   2800 Zelda Road, Suite 200-3
     Montgomery, Alabama 36106
 5
     FOR THE DEFENDANTS:
 6
     Mr. Rick A. Howard
 7   NIX, HOLTSFORD, GILLILAND,
     HIGGINS & HITSON
 8   Attorneys at Law
     Suite 300, Carmichael Center
 9   4001 Carmichael Road
     Montgomery, Alabama 36106
10
     ALSO PRESENT
11
     Mr. Alfred Davis
12
         * * * * * * * * * * *
13
         EXAMINATION INDEX
14
     JERRY MICHAEL BLEVINS
15    BY MR. HOWARD                 4
16
         EXHIBIT INDEX
17
     DEFENDANTS' EXHIBIT NO.:
18
      1  Notice of Discrimination    28
19
      2  Enrollment Listing from BC&BS  33,52
20
      3  2/27/07 City of Tuskegee     79
21    4  City Council minutes
22    4  Complaint                    88
23    5  Notice of Claims             89,98
```

Page 3

```
 1            STIPULATIONS
 2        It is hereby stipulated and agreed by
 3   and between counsel representing the parties that
 4   the deposition of JERRY MICHAEL BLEVINS is taken
 5   pursuant to stipulation and agreement; that all
 6   formalities with respect to procedural
 7   requirements are waived; that said deposition may
 8   be taken before Mallory M. Johnson, Certified
 9   Court Reporter and Commissioner for the State of
10   Alabama at Large, without the formality of a
11   commission; that objections to questions other
12   than objections as to the form of the questions
13   need not be made at this time but may be reserved
14   for a ruling at such time as the deposition may
15   be offered in evidence or used for any other
16   purpose as provided for by the Alabama Rules of
17   Civil Procedure.
18        It is further stipulated and agreed by
19   and between counsel representing the parties that
20   the filing of the deposition is hereby waived and
21   that the deposition may be introduced at the
22   trial of this case or used in any manner by
23   either party hereto provided for by the Statute.
```

Page 4

```
 1        It is further stipulated and agreed by
 2   and between the parties hereto and the witness
 3   that the signature of the witness to this
 4   deposition is hereby waived.
 5        * * * * * * * * *
 6        JERRY MICHAEL BLEVINS
 7        The witness, having first been sworn to
 8   speak the truth, the whole truth and nothing but
 9   the truth, testified as follows:
10            EXAMINATION
11   BY MR. HOWARD:
12   Q. If you could, please state your name for me.
13   A. Jerry Michael Blevins.
14   Q. Do you go by any other names?
15   A. No.
16   Q. What's your date of birth?
17   A. July 17th, 1966.
18   Q. What's your Social Security number?
19   A. 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.
20   Q. Do you have any family -- well, let me ask
21      this.  Are you married?
22   A. Yes.
23   Q. Who are you married to?
```

Page 5

```
 1   A. Carol Blevins.
 2   Q. What does she do?
 3   A. She's a housewife.
 4   Q. Do you have any kids over the age of 18?
 5   A. No.
 6   Q. Do you have any relatives within 100 miles of
 7      Montgomery?
 8   A. Yes.
 9   Q. Who are they?
10   A. Parents, Helen and Charles Blevins.  Sister,
11      Tracy Blevins -- or Tracy Ross, I think is
12      the last name she goes by.  And brother, Tony
13      Blevins.  And I've got some relatives in
14      Anniston.  I don't know if that's within a
15      hundred miles of Montgomery or not.
16   Q. It's not.  Does your wife have any relatives
17      within 100 miles of Montgomery?
18   A. No.
19   Q. Does Charles work anywhere?
20   A. Yes.
21   Q. Where does he work?
22   A. Now, is this my father?
23   Q. Yes.
```

JERRY M. BLEVINS v. CITY OF TUSKEGEE, ET AL.                    2/27/2008
DEPOSITION OF JERRY BLEVINS

3 (Pages 6 to 9)

**Page 6**

1  A. Okay. Because my brother's real name is
2     Charles, too.
3  Q. Your father.
4  A. Does he work? No.
5  Q. Is he retired?
6  A. Yes.
7  Q. Where did he work at?
8  A. He worked civil service at Maxwell.
9     Retired. And he's former Air Force retired.
10 Q. What about Helen, your mom?
11 A. She works -- at a child therapy type clinic
12    in Prattville. I can't think of the name of
13    it.
14 Q. What about your sister Tracy?
15 A. She's a school teacher.
16 Q. Where at?
17 A. Or a speech pathologist. At Garrett
18    Elementary in Montgomery.
19 Q. Is she married?
20 A. No.
21 Q. Has she been married?
22 A. Yes.
23 Q. Does her ex-husband live in this area?

**Page 7**

1  A. Not that I know of.
2  Q. What was his name?
3  A. Ed Ross.
4  Q. Where did he work?
5  A. He was in the Air Force last I knew, or he
6     was a -- he got out of the Air Force and is a
7     car salesman.
8  Q. What about your brother, Tony?
9  A. He works.
10 Q. Where at?
11 A. I'm not sure. He's doing some kind of
12    occupational or physical therapy for I think
13    a nursing home.
14 Q. Do you have any relatives in Tuskegee
15    County -- I mean, Macon County?
16 A. Not that I know of.
17 Q. Okay. Are you a member of the Macon County
18    Bar?
19 A. Tell you the truth, I don't know. The
20    Montgomery County Bar asked me that
21    yesterday, if I was a member of that. I
22    don't know. I -- I would think not, although
23    I remember somebody contacting me after I was

**Page 8**

1     appointed and soliciting me as a member and I
2     don't remember if I joined it or not.
3  Q. When you put in your application, were you a
4     member of the Macon County Bar?
5  A. Tell you the truth, I couldn't say. I don't
6     think so, but I can't tell you for certain.
7  Q. Do you go to church?
8  A. Occasionally.
9  Q. Where do you go?
10 A. Church in Wetumpka. Big church. Can't
11    remember the name of it.
12 Q. Member of any social organizations in that
13    Montgomery area?
14 A. I'm president of our condo board; but other
15    than that, no.
16 Q. What is your current address?
17 A. 285 Jasmine Trace in Wetumpka, Alabama.
18 Q. Have you ever been divorced?
19 A. Yes.
20 Q. How many times?
21 A. Once.
22 Q. What was your first wife's name?
23 A. Cindy.

**Page 9**

1  Q. What was her maiden name?
2  A. Rogers.
3  Q. Does she live around here?
4  A. No. Last I knew, she was in Tennessee.
5  Q. When was that divorce done?
6  A. Gee, while I was in law school.
7  Q. Early '90s?
8  A. Yeah. '91, '92, I would guess.
9  Q. What's your educational background?
10 A. I got a BS from Auburn University in
11    Montgomery. I got a juris prudence doctorate
12    from Jones School of Law in Montgomery. And
13    I just about finished the master's program at
14    AUM in science, but I didn't have the time.
15 Q. What year did you graduate from AUM?
16 A. It's been '90.
17 Q. What about Jones?
18 A. December '93.
19 Q. You ever been sued or sued anybody other than
20    this lawsuit?
21 A. Oh, yeah.
22 Q. How many times have you been sued?
23 A. Gee, they're hard to differentiate. How many

JERRY M. BLEVINS v. CITY OF TUSKEGEE, ET AL.                          2/27/2008
DEPOSITION OF JERRY BLEVINS

4 (Pages 10 to 13)

| Page 10 | Page 12 |
|---|---|

**Page 10**

1  times have I been sued. A dirt guy is suing
2  me now over some dirt, concerning the
3  construction of our house.
4  Q. What he's alleging?
5  A. That he's owed for some dirt he delivered to
6  our job site.
7  Q. Any other cases where you have been sued?
8  A. Gee, I'm sure there are others. Let me see
9  if I can recall them. Yeah, I mean, years
10  ago, I was sued for something; but somebody,
11  when I sued some corporation over passive
12  smoking in Montgomery, they sued me as the
13  attorney for the plaintiff in some crazy
14  claims. Gee, that's all -- I'm fairly
15  certain there are others, but that's all that
16  comes to mind in the midst of all the
17  lawsuits that fly around.
18  Q. How many times have you personally sued
19  somebody or some company?
20  A. You want a number? I don't know if I can
21  give you a number.
22  Q. A number and names.
23  A. No. I mean, I can tell you who I recall

**Page 11**

1  suing. I'm having to sue the landscaping
2  fellow that worked at our house because he
3  took our money and ran off with it.
4  Q. What is his name?
5  A. Jeff Waites with Waites Landscapes.
6  Q. Waites Scapes?
7  A. Yeah. I mean, I know I've sued BellSouth
8  over the years a couple of times for them
9  screwing my Yellow Page ads up. I've sued
10  the State Bar.
11  Q. For what?
12  A. Dealt with them trying to restrict me on
13  literature I could distribute when I was
14  running for a circuit judgeship.
15  Q. Any other lawsuits?
16  A. Oh, yeah. Even if -- whether I can think of
17  them, I don't -- I don't know. If you want
18  to give me a minute, some more may come to
19  mind. Yeah, I sued Knology. They
20  conveniently left me out of the phone book
21  for an entire year. And there are others. I
22  mean, you want me to rack my brain trying to
23  think of them?

**Page 12**

1  Q. Sure.
2  A. They're clients over -- there's been several
3  like small claims type cases over fees over
4  14 years.
5  Q. Anything in the last five years?
6  A. They all run together. But the ones I
7  mentioned, that's all I can recall off the
8  top of my head.
9  Q. You ever had any Bar complaints about you?
10  A. Yeah.
11  Q. How many?
12  A. Oh, shoot, I don't know.
13  Q. Any in the last five years?
14  A. Yeah. Yeah, there was one that was just
15  disposed of here recently.
16  Q. What was it about?
17  A. I mean, really, isn't that stuff confidential
18  unless there's some disposition on it?
19  Q. I don't know. You said it was disposed of
20  recently.
21  A. Yeah. It was thrown out. It was a frivolous
22  complaint. You get a lot of frivolous
23  complaints.

**Page 13**

1  Q. Well, I just asked that because you made some
2  Bar complaints about Bulls.
3  A. Well, Judicial Inquiry Commission.
4  Q. Right.
5  A. Yeah.
6  Q. So I guess that gives me room to see what's
7  out there about you.
8  A. Well, I mean, I can say nobody complained
9  about me serving the city prosecutor. And --
10  Q. Other than Bulls?
11  A. He didn't complain to the Bar, did he? If he
12  did, I didn't know.
13  Q. Well, I don't know. I just meant complaint.
14  I'm just asking about to the Bar Association.
15  Just tell me how many Bar complaints that you
16  know of that are against you.
17  A. That are pending now?
18  Q. Or have been filed against you.
19  A. Oh, gee, over 14 years, there's been a lot of
20  crazy people filing crazy complaints.
21  Probably -- I had over 14 at one time that
22  were all thrown out. I mean, there's been a
23  number of complaints by people without good

JERRY M. BLEVINS v. CITY OF TUSKEGEE, ET AL.                    2/27/2008
DEPOSITION OF JERRY BLEVINS

| Page 14 |
|---|
| 1  sense that have the right to file complaints.<br>2  I mean, I couldn't guess.  I don't know.<br>3  It's been a number.<br>4  Q.  Where did you work at before you went to law<br>5  school?  I assume that you worked somewhere.<br>6  A.  Yeah, I worked for the State.<br>7  Q.  What did you do for the State?<br>8  A.  I was a social worker; and before that, I was<br>9  a counselor for youths.<br>10  Q.  What was the last year that you worked for<br>11  the State?<br>12  A.  It must have been '93.  It was the last job I<br>13  had before I became an attorney.<br>14  Q.  Ever filed bankruptcy?<br>15  A.  No.<br>16  Q.  Ever been arrested?<br>17  A.  No.<br>18  Q.  Ever been fired before?  I guess other than a<br>19  client.<br>20  A.  It seems like when I was 16 or something.  I<br>21  don't think I was fired.  I was just let go.<br>22  Q.  What are you claiming in the lawsuit against<br>23  the City of Tuskegee? |

| Page 15 |
|---|
| 1  A.  Specifically against the City?<br>2  Q.  And Alfred Davis?  I may have a copy of your<br>3  complaint here, too.  I guess I don't.<br>4  A.  Okay.<br>5  Q.  Are you claiming fraud?<br>6  A.  Yeah, fraud and the inducement as to<br>7  Mr. Davis.  Breach of contract, appears<br>8  against Mr. Davis and the City of Tuskegee.<br>9  And negligence against Mr. Davis.<br>10  Q.  Are you claiming any type of fraud against<br>11  the City?<br>12  A.  In the pending lawsuit, I do not believe<br>13  there's an allegation of fraud against the<br>14  City.<br>15  Q.  Do you plan to amend your complaint at any<br>16  time in the future to bring additional<br>17  charges?<br>18  A.  I'm going to have to put today's testimony<br>19  through the mill and see if that is<br>20  warranted.<br>21  Q.  What about the breach of contract?  Are you<br>22  suing Mr. Davis for a contract or the City of<br>23  Tuskegee for a contract? |

| Page 16 |
|---|
| 1  A.  According to the lawsuit that I filed, I'm<br>2  suing both of them for breach of contract.<br>3  Q.  Would you agree with me that Mr. Davis did<br>4  not appoint you or hire you in a personal<br>5  matter?<br>6  A.  I don't know if he did or not.  I mean, he<br>7  sent me a --<br>8  Q.  Did you ever apply for a position for<br>9  Mr. Davis outside the realm of city manager?<br>10  A.  No.  The application was submitted to him as<br>11  city manager.<br>12  Q.  What do you think that Mr. Davis did that was<br>13  a negligent act?<br>14  A.  And the -- you know, the negligence is like<br>15  some of these could be alternative counts.<br>16  The negligence as an alternative count for<br>17  the fraud would be he was careless or<br>18  neglectful or unskillful in making the<br>19  representations he made in the notice of the<br>20  position and in the letter of appointment.<br>21  Q.  So there's two documents that evidence what<br>22  you claim to be a negligent act, defined as<br>23  careless, unskillful, neglectful? |

| Page 17 |
|---|
| 1  A.  Yes.  He made certain representations in both<br>2  of those documents that apparently are<br>3  inaccurate, and it was either fraudulent or<br>4  as an alternative, it was a result of<br>5  negligence.<br>6  Q.  The documents that we're referring to,<br>7  Document 3 to Mr. Davis's deposition and 4 to<br>8  his deposition?<br>9  A.  Yes.<br>10  Q.  Are there any other documents that you say<br>11  evidences neglect or negligence?<br>12  A.  Can you be more specific?  I mean, I think<br>13  there was a lot of neglect and stuff on the<br>14  City's part or Mr. Davis's part.  But as far<br>15  as the claim that we're talking about the<br>16  negligence, these are the two primary<br>17  documents that that claim is based on.<br>18  Q.  What other documents do you say evidences<br>19  that?<br>20  A.  Evidences the negligence that's alleged in my<br>21  lawsuit?<br>22  Q.  Yes.<br>23  A.  Those are the two documents that that claim |

JERRY M. BLEVINS v. CITY OF TUSKEGEE, ET AL.                              2/27/2008
DEPOSITION OF JERRY BLEVINS

6 (Pages 18 to 21)

Page 18

1     is premised on.
2  Q. Any other documents on which that claim is
3     premised upon?
4  A. Not that I know of presently, no.
5  Q. What document, if any, is the breach of
6     contract based upon?
7  A. The letter of appointment, in my opinion, is
8     an offer that I accepted that formed a
9     contract.
10 Q. That's Exhibit 4 to Mr. Davis's deposition,
11    correct?
12 A. Yes.
13 Q. And you're saying that is an offer?
14 A. Yes.
15 Q. What offer did you think they made -- that
16    they made to you?
17 A. Well, they made the offer that was espoused
18    in Exhibit 3, the notice of the position and
19    confirmed by Exhibit 4, which is to serve as
20    city prosecutor through September 30th, 2008.
21 Q. After you received the notice shown in
22    Exhibit 3, what did you do, fill out an
23    application and send them a resume?

Page 19

1  A. If I recall, I sent Mr. Davis a letter with a
2     resume.
3  Q. Why do you not constitute that as an offer of
4     employment from you?
5  A. Well, I wasn't the employer. I can't offer
6     to work for them. And they were the employer
7     offering to hire me as city prosecutor. I
8     could have accepted the employment or
9     rejected it.
10 Q. Is there any reason why I shouldn't consider
11    the resolution appointing you prosecutor as
12    the acceptance of your employment offer?
13 A. The resolution was not part of our agreement.
14    I didn't even know of the resolution until
15    the lawsuit was filed.
16 Q. Well, what is the resolution, offer or an
17    acceptance?
18 A. It's neither. Mr. Davis entered into a
19    contract on behalf of the City, which -- the
20    terms of which are embodied in Exhibit 4 and
21    confirmed by Exhibit 3.
22 Q. Why do you say Mr. Davis entered into a
23    contract?

Page 20

1  A. Well, because in my opinion, he's the one
2     that hires the city prosecutor. He's the one
3     that represented to me he was accepting
4     applications. He's the one that sent me a
5     letter telling me I was appointed, and I
6     believe the law indicates he appoints that
7     position.
8  Q. What law?
9  A. The law we went over.
10 Q. Are you referring to Exhibit 2?
11 A. Yes.
12 Q. Do you have any idea about the powers of the
13    city manager within the City of Tuskegee?
14 A. They cannot differ than the powers embodied
15    in the law.
16 Q. So Mr. Davis testified that the city council
17    has all power to appoint prosecutor and
18    judge; do you remember that?
19 A. I believe he did.
20 Q. Are you saying that's illegal under Alabama
21    law?
22 A. I'm saying that my understanding of the
23    relevant statute, Mr. Davis can seek input or

Page 21

1     guidance from the council. He can seek a
2     recommendation. But in the end, the law
3     we've looked at today clearly says he
4     appoints all officers and employees of the
5     City with the exception of those set forth in
6     that statute.
7  Q. Did you consider yourself to be an officer of
8     the City?
9  A. No. I considered myself to be an employee
10    and -- I guess and possibly an officer.
11 Q. Did you make policy as far as your position
12    within the City?
13 A. Yes.
14 Q. What policy did you make?
15 A. On what cases to prosecute; how strict to
16    prosecute; which cases to informally adjust;
17    which cases were filed; which cases were not
18    filed. Made all kind of decisions.
19 Q. Will you agree with me that you were --
20    strike that. I know there's difference in
21    what everybody is calling an employee or
22    appointee. Would you agree with me that you
23    were an appointee?

JERRY M. BLEVINS v. CITY OF TUSKEGEE, ET AL.                    2/27/2008
DEPOSITION OF JERRY BLEVINS

7 (Pages 22 to 25)

| Page 22 | Page 24 |
|---|---|

**Page 22**

1   A. I was a -- I was appointed to serve as an
2      employee of the City of Tuskegee. Yeah.
3   Q. And that appointment included policy-making,
4      correct?
5   A. I mean, I don't know if you want to call
6      it -- all I can tell you is what I did. I
7      don't know if it constitutes policy-making
8      legally or not. I just did the job I was
9      hired to do, and I'll leave it to others to
10     determine what that qualifies as.
11  Q. But as far as decisions, what cases were to
12     be brought or modified, you made that
13     decision, correct?
14  A. Well, in a few instances. Generally, the
15     magistrate would make those decisions, unless
16     they desired my input on it.
17  Q. Did you interview with anybody for the
18     appointment of prosecutor?
19  A. Yes.
20  Q. Who?
21  A. Mr. Davis, the mayor, Councilwoman Moon. I
22     believe Councilwoman Fields was present.
23  Q. Did you know whether or not the city council

**Page 24**

1   Q. Wait. Let me stop you there.
2   A. All right.
3   Q. The resolution that you've used or you used
4      as Plaintiff's Exhibit 13 indicates that
5      there was not a clear vote on who should be
6      judge, correct? Did you read Exhibit --
7   A. I believe there was a 2-to-2 vote, and as a
8      result by default, Bulls remained judge.
9   Q. That's correct. So he's basically a holdover
10     from the previous term, correct?
11  A. He is a holdover, yeah.
12  Q. So as soon as they vote, they can change
13     judges, correct?
14  A. Well. He -- he stays in office until his
15     successor has been approved, right.
16  Q. So --
17  A. He didn't serve at the pleasure. They can't
18     necessarily -- well, Mr. Davis said he serves
19     at the pleasure. Bulls did. That's not --
20     he said the municipal judge does. He didn't
21     say Bulls.
22  Q. Let's talk about Bulls.
23  A. The municipal judge does not serve at the

**Page 23**

1      had to vote on your appointment?
2   A. No, I had no idea how the process worked at
3      the time I applied.
4   Q. Did you inquire as to how the process would
5      work?
6   A. No. I assumed they knew how to work the
7      process they were engaged in. So no. Had no
8      reason at the time to think they didn't know
9      what they were doing. So I didn't question
10     it.
11  Q. So they're automatically wrong in your eyes?
12  A. About what?
13  Q. You said you thought they knew what they were
14     doing. How do you know they didn't?
15  A. Because Mr. Davis is now saying the city
16     council appoints the prosecutor, which
17     appears to be wrong.
18  Q. Based on that code provision?
19  A. Right. He's saying --
20  Q. Any other reason?
21  A. Well, he's saying the municipal judge serves
22     at the pleasure of the council, which he does
23     not.

**Page 25**

1      pleasure of the city council, period; and so
2      that was wrong.
3   Q. Isn't it true that a holdover judge would
4      serve at the pleasure of the city council
5      when they decide to vote?
6   A. They -- continues to serve until the
7      successor is named.
8   Q. And he stays in that office until a successor
9      is named, correct?
10  A. That's my understanding.
11  Q. And there's no law that says when they have
12     to take that vote, correct?
13  A. Well, they're supposed to take it before the
14     term is up. But if they don't, then he stays
15     in office until the successor is named.
16  Q. Okay.
17  A. But, again, Mr. Davis said the municipal
18     judge serves at the pleasure. He didn't say
19     Bulls, and that was an incorrect statement.
20  Q. What about other city prosecutors? Do you
21     know if there's any law that says they have a
22     specific term?
23  A. Not that I can find.

JERRY M. BLEVINS v. CITY OF TUSKEGEE, ET AL.                    2/27/2008
DEPOSITION OF JERRY BLEVINS

8 (Pages 26 to 29)

| Page 26 | Page 28 |
|---|---|
| 1  Q. Wouldn't that not make the position of city | 1    Exhibit #1. What are you claiming in your |
| 2      prosecutor different than a municipal judge? | 2    notice of discrimination that you sent to the |
| 3  A. Say that again. I was thinking about | 3    EEOC? I think you alleged unequal treatment |
| 4      something. | 4    based on the insurance, correct? |
| 5  Q. I think we agree -- or I haven't found a law | 5  A. Right. |
| 6      that says a city prosecutor has a term, and I | 6  Q. Anything else? |
| 7      don't think that's what you said, too, | 7  A. That's all that comes to mind right off the |
| 8      correct? | 8      top of my head, but let me look here and I |
| 9  A. Right. | 9      may be able to tell you for certain. |
| 10 Q. Would that not make your position as the city | 10 Q. Do you have any different documents that you |
| 11     prosecutor different from the city judge | 11     sent to the EEOC other than what I've got in |
| 12     because he has a set term? | 12     Defendants' Exhibit #1? |
| 13 A. Different in that respect, yes. | 13 A. Oh, yeah. Yeah. If that's all you've got, |
| 14 Q. How did you find out about the position of | 14     there was others. Yeah, I did allege in my |
| 15     city prosecutor? | 15     initial letter to the EEOC that I believe |
| 16 A. An attorney in Tuskegee mentioned it to me. | 16     that my termination was racially motivated |
| 17 Q. Who is that? | 17     and was further in retaliation for my |
| 18 A. Lateefah Muhammad. | 18     inquiries concerning the availability of |
| 19 Q. Do you know who all applied for the position | 19     health insurance coverage available to me as |
| 20     of prosecutor? | 20     city prosecutor. |
| 21 A. I thought there was four but I can only | 21 Q. When did you complain or inquire about |
| 22     recall three, myself, Keith Thomas and Ed | 22     insurance? |
| 23     Raymon; although, I thought there was | 23 A. First day I came here after receiving notice |

| Page 27 | Page 29 |
|---|---|
| 1      another. But if there was a name, I can't | 1      of the appointment. No, actually, I -- it |
| 2      think of it. | 2      was not even a court day because I remember I |
| 3  Q. What race is Ed Raymon? | 3      came over early not on a court date and met |
| 4  A. He's white -- I mean, he looks white. I | 4      with Angie Hamilton to learn the procedures |
| 5      guess he's white. | 5      of the municipal court that they used and |
| 6  Q. Same for Keith Thomas? | 6      also to go by the personnel office and |
| 7  A. Yeah. | 7      inquire about the insurance. On that date is |
| 8  Q. Earlier when you were asking questions, you | 8      when the application was filled out, and I |
| 9      said you thought that you lost your job | 9      was told I could get the health insurance on |
| 10     because you were white. Is that your | 10     that date. |
| 11     position in this case or in your EEOC | 11 Q. Told that you could? |
| 12     complaint? | 12 A. Yes. For the next couple of months, I |
| 13 A. I think I was treated differently with | 13     believed I was covered under the City's |
| 14     respect to the health insurance issue because | 14     insurance until I found out differently. |
| 15     I was white, yes. | 15 Q. Had you ever been a prosecutor before? |
| 16 Q. Do you think you lost your position because | 16 A. No. |
| 17     you were white? | 17 Q. When you were paid, did they take out |
| 18 A. I wouldn't be surprised if that played a | 18     employment taxes? |
| 19     factor in it. | 19 A. No. |
| 20 Q. Well, is that what you're claiming in your | 20 Q. What did you think the payment term of your |
| 21     EEOC notice of discrimination? | 21     position was? |
| 22 A. I don't recall what was in there. | 22 A. Exactly what the mayor told me. |
| 23 Q. Let me mark this as I guess Defendants' | 23 Q. What was that? |

JERRY M. BLEVINS v. CITY OF TUSKEGEE, ET AL.                    2/27/2008
DEPOSITION OF JERRY BLEVINS

9 (Pages 30 to 33)

<table>
<tr><td>

Page 30

1   A. During that meeting I've mentioned
2     previously, he told me the pay was $1,000 per
3     month, and then he inquired as to whether I
4     would accept the appointment if it was
5     offered at that rate.
6   Q. Did he say anything about insurance?
7   A. No.
8   Q. So you indicated that you thought you were
9     getting insurance for a couple of months,
10    correct?
11  A. Well, I thought I -- after I had applied for
12    it at the City and they indicated I was going
13    to be covered, I thought for several months I
14    had it until I learned I actually didn't have
15    it.
16  Q. Do you have insurance with any other
17    organization?
18  A. You mean now?
19  Q. Then and now.
20  A. Well, yeah. I canceled the coverage I had in
21    place at the time because I was told I was
22    covered through the City.
23  Q. Who did you have it with?

</td><td>

Page 32

1     covered?  In what respect?  That I actually
2     couldn't get it with the City or that Blue --
3     or that the City made an error on what they
4     originally told me?  I mean, what -- which
5     one are you referring to?
6   Q. Both, I guess.  When did you find out that
7     you were not covered, and then when did you
8     found out you could not get it?
9   A. A couple of months after I applied for it
10    with the City, if I remember right, I
11    received some kind of communication from Blue
12    Cross, something in the mail indicating I had
13    no coverage.  And I then contacted Mr. Davis,
14    and that's when he told me that I could not
15    have the coverage.  And in that discussion I
16    had asked Bulls about it before talking with
17    Mr. Davis and told him that Bulls had it.
18    You know, how come I can't get it?  And
19    that's when he told me that Bulls shouldn't
20    have it, either, and that it was going to be
21    immediately terminated.
22       I then went back and got Blue Cross as I
23    had it before, privately.  Was that your

</td></tr>
<tr><td>

Page 31

1   A. Blue Cross.
2   Q. Do you remember what date you canceled it?
3   A. Around the same date I filled out the
4     applications with the City.  Immediately.
5   Q. Was your family on that coverage?
6   A. Yes.
7   Q. Did your family cancel their coverage?
8   A. Yes.
9   Q. Did you think the City was just paying your
10    premiums on that coverage?
11  A. Yeah.  They told me when I went in, they said
12    you're covered as in the role of prosecutor.
13    And they acted like there was confusion when
14    I first went in.  And then the people made
15    some inquiries while I was there, came back
16    and said yes, you're covered under a policy.
17    Fill these forms out.  And there was no cost
18    to me.  The City paid for the coverage.
19  Q. When did you find out that you were not
20    eligible for insurance?
21  A. A couple of months later.  Now, let me -- I
22    think that was a bad question, or a bad
23    answer.  When did I find out I was not

</td><td>

Page 33

1     question?
2   Q. How many times did you talk to Mr. Davis
3     about insurance before you sent him this
4     letter dated March 1st, 2007, Plaintiff's
5     Exhibit 6, regarding what you claim to be a
6     discrimination claim?
7   A. You see this?  I would have spoken with him
8     in that discussion I just mentioned where he
9     says Bulls' insurance was going to be
10    immediately terminated.  I believe that was
11    the only discussion I had with him leading up
12    to this letter being sent.  This was sent
13    after I learned that Bulls' coverage had not
14    been terminated contrary to what Mr. Davis
15    told me.  So I believe it was just that one
16    discussion.
17  Q. I'm going to mark this as Defendants'
18    Exhibit #2.  Have you ever seen that document
19    before?  And I'll represent to you that's
20    what I sent to the EEOC.  I'm not sure if
21    they sent things back to you or not.
22  A. I have not seen it before.
23  Q. It appears that document says something to

</td></tr>
</table>

JERRY M. BLEVINS v. CITY OF TUSKEGEE, ET AL.                    2/27/2008
DEPOSITION OF JERRY BLEVINS

10 (Pages 34 to 37)

Page 34

1   the contract was removed on March 1st, 2006.
2   Do you have any reason to dispute that date?
3   A. You mean, do I have any concrete reason that
4   I can point to, no. Do I suspect these
5   people change and alter things to fit their
6   needs, yes.
7   Q. Based on what?
8   A. Based upon their handling of this entire
9   issue with me serving as city prosecutor.
10   Based upon my experience in dealings with
11   them. So, I suspect if it was canceled on
12   this date, there was something underhanded
13   being done in lieu of the cancellation.
14   Q. That's just speculation.
15   A. Well, I believe at mediation when we mediated
16   the EEOC complaint, it was disclosed that
17   Bulls continued to have insurance on the
18   City's rolls, but that Bulls was now paying
19   for his coverage through the City. All
20   right. So if that's the case, that's
21   underhanded.
22   Q. What if it was just a mistake? You never
23   made a mistake before?

Page 35

1   A. I've never seen anybody make as many mistakes
2   as the City of Tuskegee supposedly makes, no.
3   Normally, when there's that many mistakes,
4   there's something rotten in Denmark, which is
5   what I expect is going on here. I suspect
6   further that the recent increase in Bulls'
7   pay is to compensate him for having to go
8   buy his own insurance now. So that's another
9   underhanded maneuver I would point to.
10   Q. Just everybody's out to get you, huh?
11   A. No, just the City of Tuskegee is in shambles.
12   Q. Well, when did you arrive at that opinion?
13   A. Based upon my dealings with them with regard
14   to being city prosecutor. I mean, you've got
15   a judge dismissing cases of people he knows.
16   You've got all kind of shady things going on
17   in municipal court that I didn't approve of.
18   Q. Such as?
19   A. Including abusing victims of assaults;
20   including a city judge making false
21   allegations against people; a city judge
22   stealing money from his clients.
23   Q. Who did he make false allegations against?

Page 36

1   A. Me.
2   Q. Is that just a matter of who you believe?
3   A. No, they were false, and he was lying.
4   That's a fact.
5   Q. I think you said you didn't go to court.
6   Were you there?
7   A. No, I didn't go to court because he didn't
8   bother to institute a procedure to notify me
9   when cases were appealed to circuit court.
10   And as a result of him not doing his job, he
11   then filed a complaint that I wasn't in
12   circuit court when he knew I hadn't even been
13   notified.
14   Q. So when we discuss all this turmoil -- do you
15   agree that there was turmoil?
16   A. There was a person as a city judge who
17   shouldn't have been one, should not be one
18   now; and yes, he created all kind of havoc in
19   municipal court.
20   Q. According to you, he's got a term of office,
21   correct? Two years?
22   A. Well, he did initially.
23   Q. Which would it be easier to get rid of, you

Page 37

1   or him, if he's got a term by law?
2   A. Well, his term was up. At the time I was
3   appointed, his term had already expired.
4   Q. But he was still judge?
5   A. He was judge by default.
6   Q. And then I guess he was serving at the
7   pleasure of the council?
8   A. I don't know whose pleasure he was serving
9   at. It certainly wasn't mine or a lot of
10   other people in municipal court.
11   Q. So all of this is his fault, correct?
12   A. What's -- no, it's not his fault that I was
13   treated differently with respect to health
14   insurance.
15   Q. We're talking about the turmoil right now.
16   A. It's not his fault Mr. Davis made
17   misrepresentations to me, no.
18   Q. We're talking about the turmoil. That's what
19   the question was. Is all this turmoil his
20   fault?
21   A. There wasn't any turmoil. I had a job to do.
22   He acted unethically, and I did my job. He
23   had a job to do, and I guess he did his job.

JERRY M. BLEVINS v. CITY OF TUSKEGEE, ET AL.                          2/27/2008
DEPOSITION OF JERRY BLEVINS

11 (Pages 38 to 41)

Page 38

1   That's not turmoil. That's the justice
2   system. That's the court system. If he acts
3   unethically, I'm obligated to bring it to the
4   attention of the appropriate entity. If he
5   abuses a victim in municipal court, I'm
6   obligated as a prosecutor to address it
7   within the court system.
8   Q. What were the results of the complaint in
9      Plaintiff's Exhibit 8? Is it still ongoing
10     or it is just a complaint?
11  A. No, they determined there wasn't anything
12     there that could be pursued.
13  Q. So this bar is in this conspiracy with
14     Judge Bulls?
15  A. The Judicial Inquiry Commission.
16  Q. Okay.
17  A. Whether they pursue it or not is their
18     decision. I had an ethical obligation to
19     report it.
20  Q. But they found nothing to pursue, correct?
21  A. Yeah. They don't pursue much. So that's in
22     line with their other things they don't
23     pursue. Apparently, they didn't think his

Page 39

1   outrageous conduct violated the canons of
2   judicial ethics. That's their decision. I
3   don't make that decision.
4   Q. What about your allegations in Plaintiff's
5      Exhibit 9?
6   A. What's that?
7   Q. Did they pursue that one?
8   A. No, but they should have.
9   Q. So they're in the conspiracy again?
10  A. There is no conspiracy. If the Judicial
11     Inquiry Commission opts not to take action
12     against a judge who's acting inappropriately,
13     that's their decision. I can't help that.
14  Q. What if the city council of Tuskegee thinks
15     the same thing? Is that their decision? You
16     can't do anything about that?
17  A. I can't make them get rid of Bulls if they
18     want to keep him. If he steals from clients
19     and stuff, I can't make them get rid of him.
20     If that's the type person the City of
21     Tuskegee wants as a judge, that's their
22     prerogative.
23  Q. Did the Judicial Inquiry believe Bulls over

Page 40

1      you?
2   A. I don't think they ever got to the point of
3      assessing credibility. They just deemed it
4      not violative of -- apparently, the
5      commission says a judge can berate a victim,
6      can verbally abuse a victim in open court;
7      there's nothing ethically wrong with that.
8      If that's their decision, that's their
9      decision.
10  Q. Did they have a written decision?
11  A. No. They just issued some little short
12     letter that the commission doesn't have
13     jurisdiction over or something.
14  Q. How about the other one? Did they issue any
15     type of opinion or written statement about
16     what's shown in Plaintiff's Exhibit 8?
17  A. No. I think if I remember right, it was just
18     one letter that came out after both of those
19     had been received.
20  Q. Have you ever talked to Judge Martin about
21     this matter?
22  A. No. But see, all this supposed, quote,
23     turmoil that existed in municipal court arose

Page 41

1   from that complaint of unethical conduct. It
2   all began after that and was repeated and
3   consecutive after that. Nothing more than
4   retaliation for calling into question his
5   unethical conduct.
6   Q. Is it your position that they just got back
7      at you because you made a complaint?
8   A. Bulls did, yes. Attempted to.
9   Q. Does Judge Bulls have any control over your
10     appointment?
11  A. You mean by law or in real life or what?
12  Q. Both.
13  A. No. It's my understanding he wanted Keith
14     Thomas appointed, and so I would expect he
15     wasn't in favor of me being appointed.
16     Whether he made that known, I don't know.
17  Q. Did you have any history with Bulls before
18     you were appointed prosecutor?
19  A. Oh, no. I had seen him on occasion. Was on
20     a friendly basis with him. We were on a
21     friendly basis up until the time I questioned
22     his unethical conduct and the way he treated
23     that victim of the assault.

Page 42

1  Q. Did he ever express to you that you were
2     wrong about that situation?
3  A. No. Everybody in court knew that he was
4     wrong and was appalled by his behavior.
5  Q. Who did you talk to about it?
6  A. I didn't have to talk to anybody. You could
7     see by the expression on their faces and the
8     expression on the face of Ms. Graves. It was
9     atrocious.
10 Q. You're not telling everybody that you're
11    clairvoyant and you knew what they were
12    thinking, are you?
13 A. No. But I know when somebody acts out of
14    line and everybody in a setting there to
15    witness it thinks it's out of line. He was
16    clearly out of line.
17 Q. What did he do? I didn't even ask that
18    question.
19 A. Let me see my letter if I can.
20 Q. This is about the Carmellia Graves incident?
21 A. Yeah. Poor Ms. Graves. The victim of a
22    violent assault sustained serious injury -- I
23    don't think this is it, is it?

Page 43

1  Q. There's the other one.
2  A. Comes to court to get a restitution.
3  Q. Who was she assaulted by?
4  A. A guy named Elijah Woods.
5  Q. Do you know any of the background on that,
6     where it happened, what happened or --
7  A. Well, I mean, I looked at it when I was
8     addressing the case. If I remember, he beat
9     her up outside some club or something. And
10    we have photographs of the injuries which
11    were quite severe. And when I became
12    prosecutor, she came to me and said she had
13    gotten nowhere trying to collect her
14    restitution and asked me for help. I told
15    her I would help her. And we then got the
16    case moving. We then appear before Bulls and
17    he spoke very rudely to her. I mean, we went
18    to court. Mr. Woods was there to pay the
19    restitution in full. And we're in court, and
20    he starts just lambasting her, something to
21    the effect -- you know, I hadn't thought
22    about this, so I'm doing this spontaneously.
23    But something to the effect of you got some

Page 44

1     nerve thinking this court is going to serve
2     as your -- the collector of your judgment.
3     Who do you think you are. And just speaking
4     loudly, contemptuously, and just berating her
5     in front of the entire courtroom
6     undeservedly.
7  Q. Was that a judgment in the circuit court,
8     district court, or city court?
9  A. No, this was -- Bulls entered -- Bulls
10    accepted the plea agreement that contained
11    the restitution. I figure we were there to
12    collect. And I mean, I suspected the reason
13    he attacked her as he did in court on that
14    day, after later finding out Ms. Graves had
15    some unrelated case going on with the City,
16    it was sort of payback for that case.
17 Q. Isn't that a stretch?
18 A. No. Not knowing Bulls it's not, no. If the
19    guy will steal from his own clients, I
20    suspect he would probably publicly berate
21    somebody he doesn't like.
22 Q. That's just your opinion.
23 A. No. It's a fact he stole from his clients.

Page 45

1  Q. No. No. The second part of that.
2  A. Well, I --
3  Q. You said he'd do that, he'd do something
4     else.
5  A. I stood there and watched him berate this
6     lady, and it was totally out of line and
7     unethical. Then he indicated he was going to
8     reopen the criminal case, once I challenged
9     it, and set aside the conviction. So no, he
10    shouldn't be city judge. He shouldn't serve
11    in any capacity, probably shouldn't even be a
12    licensed attorney.
13 Q. Is this whole case about your personal
14    conflict with him?
15 A. No, it's about my conflict with the City of
16    Tuskegee. I haven't sued Bulls.
17 Q. You said you were going to.
18 A. When did I say that?
19 Q. You said you were going to take legal action
20    in one of these exhibits.
21 A. Oh, yeah.
22 Q. Did you?
23 A. No, I didn't.

JERRY M. BLEVINS v. CITY OF TUSKEGEE, ET AL.                    2/27/2008
DEPOSITION OF JERRY BLEVINS

13 (Pages 46 to 49)

| Page 46 | Page 48 |
|---|---|

**Page 46**

1  Q. Why not?
2  A. Time is not up yet. I probably should, and
3     I'm seriously contemplating it. Because if
4     this internal turmoil, as Mr. Davis has
5     testified about -- which I believe he said I
6     was let go because of the internal turmoil
7     being the documents that Bulls submitted to
8     the city council, I believe he probably
9     should be sued for defamation. And he may
10    very well be.
11 Q. You indicated earlier that you did not see
12    the resolution where they appointed you as
13    prosecutor; is that correct?
14 A. No, I never saw it until you sent it to me.
15 Q. Is it your position that ignorance of law is
16    an excuse in this case?
17 A. What law is somebody ignorant about?
18 Q. It says you were appointed and serving at the
19    pleasure of the city council.
20 A. That's not the contract I entered into with
21    Mr. Davis. That means nothing.
22 Q. So the resolution or ordinance means nothing?
23 A. If it meant something, I'm sure somebody

**Page 47**

1     would have sent it to me.
2  Q. So if you didn't get it, somebody else is
3     wrong, correct?
4  A. No. It means nothing. What, am I supposed
5     to go down there and ask the city council if
6     they know what they're doing? No. Mr. Davis
7     told me I was appointed through September of
8     2008 as was indicated in the notice of the
9     position. I relied on his statements. I
10    accepted the position based on his
11    statements. Now he tells me his statements
12    weren't true.
13 Q. I don't think that's what he told you.
14 A. Well, if it was true, I'd still be city
15    prosecutor through September of 2008.
16 Q. So you think you had a property interest in
17    that job.
18 A. No, I think I was hired to serve as
19    prosecutor until September of 2008 as
20    Mr. Davis told me.
21 Q. And they couldn't get rid of you for any
22    reason?
23 A. I don't know if they could or not. I imagine

**Page 48**

1     the law generally permits if you breach a
2     contract, you terminate it.
3  Q. Did you think they could get rid of Bulls?
4  A. Sure. They could get rid of Bulls now.
5  Q. Well, why did you think they could get rid of
6     him and not get rid of you?
7  A. Because he's just lingering around because
8     he's there by default.
9  Q. But you said he had a term of office.
10 A. Now, you know you understand what's going on.
11    You want me -- he had an original term of two
12    years when he was first appointed.
13 Q. That's right.
14 A. Just because he's been hanging around now by
15    default doesn't mean he still has two years
16    to go.
17 Q. Well, you brought this code up trying to
18    prove him wrong as to term.
19 A. He was wrong.
20 Q. Well, which is it, is Bulls there at a term
21    or does he serve at the pleasure of the
22    council?
23 A. I didn't ask him about Bulls.

**Page 49**

1  Q. Well, I'm asking you about it.
2  A. You're taking two different things.
3  Q. Let's ask you about it.
4  A. Yeah. I think we've answered this, but go
5     ahead.
6  Q. Does he serve at the pleasure of the
7     council?
8  A. No. He served an original two-year term, and
9     he's there until a successor is named. There's no pleasure about it. When a
10    successor is named, he's gone. It's rather
11    simple.
12
13 Q. Isn't that at the pleasure? As soon as they
14    please to name a successor, he's gone?
15 A. No, that's not at the pleasure of the council
16    as you're using it; that's not the way it's
17    intended, no.
18 Q. And how do you know that?
19 A. How do you know it?
20 Q. As soon as they're pleasured to appoint
21    another one, he's gone. You said that.
22 A. Yeah. Until -- the law is clear. The law
23    says what it says. I didn't make the law.

JERRY M. BLEVINS v. CITY OF TUSKEGEE, ET AL.                    2/27/2008
DEPOSITION OF JERRY BLEVINS

14 (Pages 50 to 53)

---

Page 50

1    It says until the successor is named, and
2    that's what it is.
3  Q. Do you know how other cities operate when it
4    comes to clerks and appointees?
5  A. I have no idea. This was my first experience
6    with the city that I actually wish I didn't
7    have.
8  Q. Do you know if Alfred Davis has ever been
9    sued other than what he said in his
10   deposition?
11 A. Yeah. I believe he said he couldn't recall.
12 Q. I'm asking you what you know.
13 A. I don't know if I know of any other lawsuit
14   or not at this point.
15 Q. Is it your position that the City of Tuskegee
16   has a merit system?
17 A. I don't know if they do or not. I'm not sure
18   if they know if they do or not.
19 Q. How about a civil service system?
20 A. I don't know anything about the internal
21   workings of Tuskegee other than as it relates
22   to me serving as city prosecutor.
23 Q. Do you think you have an property interest in

---

Page 51

1    your job as city prosecutor?
2  A. Yeah, because I had a contract through a
3    definite date. They could only terminate
4    that contract on good cause.
5  Q. Show me that part, please.
6  A. Show you what?
7  Q. Where it says they could contract it with
8    good cause?
9  A. That's what the law says. You can't just
10   breach a contract for no reason.
11 Q. If you have a contract, right?
12 A. And we had one, right. Now, I'm not making
13   it up. You can look at his letter. We had
14   a -- we had a contract with a definite date.
15   Don't take my word for it. Look at his
16   letter.
17 Q. What -- do you know what the judge made?
18 A. Bulls?
19 Q. Right.
20 A. No, not for certain. I mean, I've heard, and
21   I've heard what the increase was. But other
22   than what I've heard, I don't know for fact.
23 Q. Earlier, you testified that you thought your

---

Page 52

1    termination had something to do with race,
2    correct?
3  A. Yes.
4  Q. If it had something to do with race, why
5    would they appoint somebody else who was
6    white?
7  A. I don't know. Maybe to try and cover up the
8    fact they terminated me because of my race
9    the same way they did with the health
10   insurance issue. They terminated Bulls'
11   coverage. My understanding after I brought
12   the issue up, they became aware of the EEOC
13   complaint.
14 Q. Say what, now?
15 A. It's my understanding they terminated Bulls'
16   insurance only after I believe the lawsuit
17   was filed. Or after -- it was one -- there
18   was something that triggered them to
19   terminate his insurance. I believe it was
20   the EEOC complaint.
21 Q. If you totally disregard this employee
22   listing, correct? Defendants' Exhibit #2?
23 A. Yeah. But as I said earlier, it was

---

Page 53

1    disclosed at mediation in the EEOC complaint
2    that Bulls continued to have coverage through
3    the City.
4  Q. Well, what if that was just a mistake?
5  A. Just another mistake among the many mistakes
6    the City has made? I don't buy all these
7    mistakes. I buy something more than simply
8    mistakes.
9  Q. And it's got to be against you, as always,
10   right?
11 A. Well, since I'm the one that was terminated,
12   yeah. Who else would it be against?
13 Q. Well, it just seems to me that every position
14   you take, there's always somebody else at
15   fault.
16 A. What position is that?
17 Q. All these mistakes had to be triggered
18   towards you purposely.
19 A. Why have you got to act like it's my -- you
20   see Mr. Davis's letter?
21 Q. I do. I know exactly what he's talking
22   about.
23 A. He says that's untrue.

JERRY M. BLEVINS v. CITY OF TUSKEGEE, ET AL.                                    2/27/2008
DEPOSITION OF JERRY BLEVINS

15 (Pages 54 to 57)

Page 54

1   Q. He didn't say that.
2   A. He said I didn't serve until September '08 as
3      his letter says. Okay. Your client says he
4      told me something untrue.
5   Q. No, he didn't.
6   A. You don't have to take my word for it. The
7      notice of the position says it's a permanent
8      position for the current -- through the term
9      of the current administration. He said it.
10  Q. Did you have any knowledge about what an
11     appointment was by a municipality before you
12     took this job?
13  A. No, but I've got common sense. When somebody
14     tells me it's a permanent appointment through
15     a date certain, I understand what that means
16     just as any reasonable person would.
17  Q. Describe for me the relationship that you had
18     with Bulls before this incident in court.
19  A. It was fine. Very professional. Very
20     courteous. Very respectful. Not a problem.
21  Q. What all conversations did you have with city
22     council members about Judge Bulls?
23  A. None, other than the letters that were sent.

Page 55

1      Well, no, we did have one meeting. That's
2      right. After Bulls started his false
3      allegations against me, somehow I think
4      Mr. Davis may have notified me that the
5      council wanted to talk with me. And I went
6      over there and addressed the city council and
7      the mayor and let them know how unhappy I was
8      with the circus that was going on with Bulls
9      and asked them to do something to address it.
10     And then it went for months with nothing
11     being done.
12  Q. Do you know whether Judge Bulls talked to the
13     city council?
14  A. Oh, yeah. He was over there and brought
15     witnesses. Keith Thomas was one of his
16     witnesses he brought with him.
17  Q. And what did Keith Thomas tell the council?
18  A. There's no telling. But my understanding was
19     the city council said they're not hearing
20     from any witnesses because I was not notified
21     I could bring witnesses. So they told Bulls
22     you're not bringing witnesses, and
23     apparently, they didn't hear from any.

Page 56

1   Q. Do you think it just came down to the council
2      believing Judge Bulls over you?
3   A. Believing him about what?
4   Q. It seems to me like you're yah-yahing about
5      this and he's yah-yahing about that, and they
6      just believed him over you.
7   A. Believed him about what? That he didn't
8      abuse Ms. Graves?
9   Q. Sure.
10  A. Well, if they believe him, great. What
11     difference has it got to do with me? So they
12     believed him. And what?
13  Q. So they fired you to get rid of the turmoil,
14     and it actually got rid of the turmoil.
15  A. Well, why didn't they do a little inquiring
16     and hear from Ms. Graves?
17  Q. Why did they have to?
18  A. What -- I guess they didn't have to.
19  Q. Okay.
20  A. But they can't terminate my contract when
21     they don't.
22  Q. If you've got a contract.
23  A. You can't stick your head in a hole in the

Page 57

1      ground and then say I'm at fault when you
2      didn't even make any inquiries about it.
3      Same reason he's employed there and he's
4      stolen money from his client. Why is he
5      still there?
6   Q. Has that go to do anything with the City of
7      Tuskegee?
8   A. Sure, it does.
9   Q. What?
10  A. It reflects on their -- on their competence.
11     Who's going to have a municipal judge that
12     committed felonies in forging checks,
13     stealing money --
14  Q. Has he been charged criminally in
15     connection --
16  A. He should be.
17  Q. No. That wasn't the question.
18  A. I don't know if he has or not.
19  Q. Maybe you didn't understand it.
20  A. I don't know his business other than what
21     comes out in the bar journal. They should
22     charge him with the crimes because he
23     committed crimes.

JERRY M. BLEVINS v. CITY OF TUSKEGEE, ET AL.                                    2/27/2008
DEPOSITION OF JERRY BLEVINS

16 (Pages 58 to 61)

---

Page 58

1  Q. After you made this allegation about him
2     abusing Ms. Graves, what happened next?
3  A. He had further hearings on the case.
4  Q. What happened with you and Bulls about your
5     personality conflict or whatever it was, your
6     allegation against him?
7  A. That's what prompted all the false
8     accusations and letters to the city council
9     about me. I mean, the most immediate thing I
10    recall after that, the next time we showed up
11    in court, he called the case. I walked up to
12    the bench as the prosecutor to tend to the
13    case, and he tells me, Go sit down. I'll
14    tell you when to come up here, and you don't
15    come up here until I tell you to.
16 Q. And you've never heard a judge tell somebody
17    that?
18 A. And I told him that my job is being the
19    prosecutor; and if he's hearing the case,
20    I'll be at the bench. Because Bulls had been
21    dismissing cases improperly. Had been doing
22    things on cases in my opinion he shouldn't be
23    doing; and I wasn't going to stand there

---

Page 59

1     while he did it and not be aware of what he
2     was doing.
3  Q. Has anybody agreed with your opinion?
4  A. Agreed with my opinion about what?
5  Q. That he was doing things improperly?
6  A. What do you mean? I don't go around asking
7     people if they agree with my opinion. I saw
8     it for myself and I knew he was.
9  Q. It is true that the Judicial Inquiry did not
10    agree with your opinion?
11 A. No. Is it true he dismissed a case --
12 Q. No. No. No.
13 A. No. Let me answer your question. Is it true
14    that he dismissed the case of a local
15    attorney because it was his kid charged
16    with a crime? Yeah. For no other reason
17    other than that? Yeah, that's true.
18 Q. You through?
19 A. No. You want me to go on? I'll give you
20    other examples.
21 Q. Well, what was the question I asked you? Is
22    it true --
23 A. You want me to give you the attorney's name

---

Page 60

1     and the child's name?
2  Q. Sure. Let's hear it.
3  A. I'm trying to just simply deal with the case.
4     You want me to tell about all the corrupt
5     things I actually saw going on?
6  Q. Sure.
7  A. Maybe I ought to give that to some other
8     entity.
9  Q. Well, when you get through, we're going to go
10    back to the question I asked.
11 A. What was your question?
12 Q. Is it true that the Judicial Inquiry did not
13    agree with your opinion of what happened?
14 A. I don't know if they agreed. They apparently
15    said that they don't decide if they agree
16    with it. They read it and decide if they
17    have jurisdiction over it.
18 Q. Whatever happened, you made a complaint and
19    they didn't do anything about it, right?
20 A. Just like the city council. Yeah. Does that
21    mean it's right? No.
22 Q. Is it wrong?
23 A. Yeah. You ought to get rid of a judge that's

---

Page 61

1     beating up victims. Yeah.
2  Q. So this really comes down to your beef with
3     him, and you're blaming it on the City.
4  A. He didn't beat me up. He beat up a
5     defenseless victim is who he beat up.
6  Q. Did you know Ms. Graves before all this
7     incident took place?
8  A. No.
9  Q. Did you have any interaction with Judge Bulls
10    from July 13, 2006, until you wrote that
11    letter? It looks like the date of that
12    hearing, or the incident you're talking
13    about, occurred on July 13th, 2006. Any
14    interaction with Judge Bulls before you fired
15    that letter off?
16 A. I mean, I would suppose there were. We went
17    to court every Thursday. I mean, there -- I
18    would expect we were in court between those
19    dates. I mean, I don't know. But I expect
20    we were.
21 Q. Did you ever talk to Judge Bulls about
22    Carmellia Graves?
23 A. No. He made his displeasure with me known

JERRY M. BLEVINS v. CITY OF TUSKEGEE, ET AL.                    2/27/2008
DEPOSITION OF JERRY BLEVINS

17 (Pages 62 to 65)

Page 62

1    when I was trying to protect her from his
2    attack during his attack.
3  Q. So the answer is no, you didn't talk to him
4    about it after that day in court?
5  A. No. I mean, you don't go up to judges and
6    have ex parte communications about their
7    conduct. I was a prosecutor. There's a
8    formal way to address it. That's the way I
9    addressed it. I didn't talk to him like he
10    was my buddy.
11  Q. So the answer is no?
12  A. No. It would have been ethically prohibited,
13    and I don't do those kind of things.
14  Q. Did you talk to anyone at the City about the
15    way Judge Bulls acted on July 13th, 2006?
16  A. Yes.
17  Q. Who?
18  A. Mr. Davis.
19  Q. Anybody else?
20  A. No. It was my impression that he was the
21    point of contact on all matters dealing with
22    municipal court. Nobody ever told me
23    anything different.

Page 63

1  Q. What did you tell him and what did he say to
2    you?
3  A. I took him the petition for mandamus
4    concerning the -- the legal issues.
5  Q. And we're talking about Plaintiff's
6    Exhibit 12; is that correct?
7  A. Right.
8  Q. Okay.
9  A. I know I took him that during one of our
10    meetings, and he looked over it and we
11    discussed it very briefly. I know -- what
12    was your question?
13  Q. What did you and Mr. Davis talk about? And
14    then you got on -- I took him this writ of
15    mandamus; and I asked you, are you talking
16    about Plaintiff's Exhibit 12, and you said
17    yes.
18  A. Yeah, I also -- I mean, I know we spoke, I
19    believe it was by phone, about the Graves
20    matter; and he suggested to me, get with
21    Bulls and y'all try to work it out and. I
22    told him, this isn't going to successful
23    because Bulls is on a rampage. I said maybe

Page 64

1    not those exact words but something like
2    that. I then called Bulls, and he made his
3    dislike of me calling him known during the
4    discussion.
5  Q. Now, wait a minute. You called him?
6  A. Yeah.
7  Q. About Carmellia Graves?
8  A. Right.
9  Q. But you just told me that you couldn't do
10    that.
11  A. No. I couldn't, not in court. No.
12  Q. Well, I wasn't asking -- did you ever talk to
13    him about it was the question.
14  A. Well, I didn't talk to him about it. I
15    called him and told him Mr. Davis told me to
16    call you about the Carmellia Graves. And he
17    clearly told me I'm not talking to you. I
18    don't want to talk to you. I'll deal with it
19    in court, and that's the end of that.
20  Q. Any other conversations with him before you
21    fired off the letter to the Judicial Inquiry
22    Commission?
23  A. So I called Mr. Davis back.

Page 65

1  Q. Wait. Any other conversations with --
2  A. With who?
3  Q. With Judge Bulls. First you told me you
4    didn't have any, and then you told me about
5    this one on the phone. Is there any other
6    conversations that you had with Judge Bulls
7    regarding --
8  A. I didn't have a conversation with him then.
9  Q. How --
10  A. I called him. He told me he wasn't going to
11    talk to me, and that was the end of the
12    discussion.
13  Q. Okay. The question, I'll change it so you --
14    because you don't understand it. Between
15    July 13th, 2006, did you say anything to
16    Judge Bulls regarding this Carmellia Graves
17    incident before you fired this letter off to
18    the Judicial Inquiry Commission?
19  A. I didn't know when the discussions occurred,
20    if it was between those dates or not. I'm
21    just trying to tell you the communications we
22    had. I don't know the dates of them.
23  Q. Do you know if that phone call was before or

JERRY M. BLEVINS v. CITY OF TUSKEGEE, ET AL.                                    2/27/2008
DEPOSITION OF JERRY BLEVINS

18 (Pages 66 to 69)

| Page 66 |
|---|
| 1    after the letter? |
| 2  A.  I would suspect it was before. |
| 3  Q.  Okay.  He said he's not going to talk about |
| 4      it, and then what did you do? |
| 5  A.  In his rude, condescending tone that he had |
| 6      shown with Ms. Graves, in that same tone; so |
| 7      I said thank you, and we'll deal with it in |
| 8      court as you wish.  Called Mr. Davis. |
| 9      Relayed to him what had been said and told |
| 10     him, I told you he wasn't going to deal with |
| 11     it rationally.  And that was the end of our |
| 12     conversation.  And since he wanted to deal |
| 13     with it through the courts, we dealt with it |
| 14     through the courts. |
| 15  Q. What was the result of the petition for writ |
| 16     of mandamus? |
| 17  A. My understanding it's still pending.  And I |
| 18     would say, by the way, the City never did pay |
| 19     the filing fee to pursue it. |
| 20  Q. Who did? |
| 21  A. It was a private organization that donated |
| 22     the money. |
| 23  Q. Who did? |

| Page 67 |
|---|
| 1  A. I don't recall the name of the organization. |
| 2     Chief Leon Frazier was my contact person for |
| 3     that, and he raised the money and permitted |
| 4     the money. |
| 5  Q. You said it's still pending? |
| 6  A. The last time I checked on AlaCourt, it's |
| 7     showing still active. |
| 8  Q. And when you filed the writ of petition, you |
| 9     didn't file it with the Supreme Court.  If |
| 10    it's city court, you go to circuit court, |
| 11    right? |
| 12  A. Right. |
| 13  Q. How much was the filing fee? |
| 14  A. Two hundred and something dollars.  I think |
| 15    233. |
| 16  Q. Did you ever attend any hearings in circuit |
| 17    court on this case? |
| 18  A. No.  No action has been taken on it since it |
| 19    was filed. |
| 20  Q. Do you know why? |
| 21  A. I don't have any idea. |
| 22  Q. Have you filed any motions since the petition |
| 23    for writ of mandamus? |

| Page 68 |
|---|
| 1  A. No, I haven't.  I don't know how long that |
| 2     was pending as of the date I was terminated. |
| 3     But during those times, I don't recall filing |
| 4     anything.  No. |
| 5  Q. Do you remember any hearings between the time |
| 6     you filed in August of 2006 until you |
| 7     received, I guess, the notice of termination |
| 8     on March 1st, 2007? |
| 9  A. Hearings in circuit court? |
| 10  Q. Right. |
| 11  A. No.  There were none. |
| 12  Q. Do you have any more e-mails from Mr. Davis |
| 13    to you other than the ones that you used as |
| 14    exhibits here? |
| 15  A. From Mr. Davis to me? |
| 16  Q. Either way.  You to Mr. Davis or Mr. Davis to |
| 17    you? |
| 18  A. Yes, I do. |
| 19  Q. What are they about? |
| 20  A. This filing fee for this mandamus that was |
| 21    never paid by the City. |
| 22  Q. Were you trying to collect the filing fee |
| 23    after it had already been filed? |

| Page 69 |
|---|
| 1  A. Yeah.  If I remember correctly, the clerk's |
| 2     office filed it conditionally or filed it on |
| 3     the condition that the filing fee be remitted |
| 4     promptly. |
| 5  Q. Did you ever meet with the city council in |
| 6     executive session? |
| 7  A. I don't -- I don't know.  I mean, I met with |
| 8     them on two occasions.  That's the only time |
| 9     I ever met with them. |
| 10  Q. What did you meet with them about? |
| 11  A. First time was an interview.  The second time |
| 12    was to address Judge Bulls -- or Bulls' false |
| 13    allegations. |
| 14  Q. Do you have a time frame when that meeting |
| 15    took place? |
| 16  A. Which one? |
| 17  Q. This might help. |
| 18  A. Which one? |
| 19  Q. That's an e-mail that talks about your |
| 20    requested meeting with council? |
| 21  A. Oh, no.  No, I never got a meeting at my |
| 22    request.  You're talking about the meeting to |
| 23    address Bulls' allegations or letters he had |

JERRY M. BLEVINS v. CITY OF TUSKEGEE, ET AL.                    2/27/2008
DEPOSITION OF JERRY BLEVINS

19 (Pages 70 to 73)

Page 70

1     sent or the interview? Which meeting?
2  Q. The meeting about Bulls.
3  A. I -- I couldn't tell you.
4  Q. Did you have any meeting with the council --
5     any meetings with the council in the three
6     month period before you got the letter saying
7     they appointed somebody else?
8  A. I wouldn't think so. Everything was pretty
9     smooth for a good while before the
10    termination. There was no problems. Once
11    the initial onslaught of Bulls' retaliation
12    subsided, everything cooled down; everything
13    was running smoothly.
14 Q. So it's your testimony that everything was
15    smooth up until the Carmellia Graves
16    incident, it blew up, and then it subsided;
17    and then you got the letter telling you they
18    appointed Keith Thomas?
19 A. Yes.
20 Q. Do you know if Judge Bulls ever responded to
21    the Judicial Inquiry Committee? Did he send
22    them anything?
23 A. Not to my knowledge. If he did, I'm not

Page 71

1     aware of it.
2  Q. This letter, Plaintiff's Exhibit 11, talks
3     about -- that's Judge Bulls' letter to
4     Judge Martin --
5  A. Right.
6  Q. -- saying that he's sorry that you didn't
7     show up. Did you ever talk to Judge Martin
8     about that or apologize to him or explain to
9     him what happened?
10 A. No. No. I think Judge Martin knows me well
11    enough to know that there was a reason I
12    wasn't present without having to go to him
13    and explain that.
14 Q. How does Judge Martin know you well enough?
15 A. I've been dealing with him over 14 years. He
16    knows I'm not the type person not to show up
17    on a court date. And I'm sure if he had any
18    concerns over it, he would have addressed
19    them with me.
20 Q. Do you know if Judge Bulls ever called
21    Judge Martin about that matter or spoke to
22    him in any way about it?
23 A. I -- I don't have any idea. It wouldn't

Page 72

1     surprise me, but I don't know. He could have
2     easily just stood up in court on that date
3     and said, Judge Martin, Mr. Blevins isn't
4     here because I didn't bother to institute a
5     procedure to let him know he needed to be
6     here in municipal court as opposed to turning
7     it into something it wasn't.
8  Q. What kind of procedure did you think he
9     needed to implement?
10 A. Well, you should have a procedure where at
11    least the prosecutor is notified when appeals
12    are filed to the circuit court so they can be
13    monitored.
14 Q. Who was the prosecutor before you?
15 A. Ed Raymon.
16 Q. Do you know if they ever had a problem with
17    inadequate procedure?
18 A. I don't know. And then I did -- you know, to
19    ensure it didn't happen again, I sent a
20    letter to Ms. Hamilton, the clerk, and copied
21    the entire city council documenting the fact
22    there was no procedure, and that I was
23    requesting from there on as of October 4th,

Page 73

1     '06, that I be notified of every case that
2     was appealed so that I can monitor those
3     cases.
4  Q. In Plaintiff's Exhibit 10 -- and you're
5     welcome to read it -- it says something about
6     "It's come to my attention that several local
7     attorneys have told me that they will either
8     no longer take or limit the number of
9     appointed cases in Tuskegee municipal court.
10    Do you know anything about that?
11 A. I suspect it's more lies by Bulls.
12 Q. Do you know anything about it?
13 A. The only person who quit taking appointed
14    cases, to my knowledge, was Keith Thomas
15    because he was upset he wasn't appointed city
16    prosecutor.
17 Q. You ever had any spats with Keith Thomas?
18 A. No, other than he got mad in city court
19    because he -- I don't know how to put it. He
20    didn't handle a couple of cases correctly
21    that he was on. And I made some objections
22    to things he was doing wrong, and he appeared
23    to get quite angry at that. Other than that,

JERRY M. BLEVINS v. CITY OF TUSKEGEE, ET AL.                          2/27/2008
DEPOSITION OF JERRY BLEVINS

20 (Pages 74 to 77)

Page 74

1     no, I've been friendly with Keith up until he
2     didn't get appointed and I did.  Actually,
3     he's assisted me in my campaign for circuit
4     judge in Montgomery years ago.  And we were
5     on good terms up until this.
6   Q.  What did you talk to Judge Bulls about
7     regarding his insurance?
8   A.  Which time?
9   Q.  All of them.
10  A.  Well, the first time I recall after receiving
11    notification through the City that I couldn't
12    have coverage, that in court one Thursday I
13    mentioned it to Bulls and just said something
14    like -- you know, something about the
15    insurance to him, and I think I inquired as
16    to whether he had ever been able to get it
17    through the City or something.  And he
18    quickly said, oh, I've got it.  And I said,
19    well, they're telling me I can't get it.  He
20    said, oh, no, no.  Somebody is just screwing
21    up over there.  He said, call Mr. Davis,
22    he'll straighten it out.
23  Q.  Do you know when that conversation took

Page 75

1     place?
2   A.  Oh, that wasn't -- that would have to be
3     within the first couple of months or so of my
4     appointment.  And that's when I called
5     Mr. Davis.
6   Q.  When was the second conversation you had with
7     Judge Bulls?
8   A.  That was a good bit later.
9   Q.  Before or after the Carmellia Graves
10    incident?
11  A.  And actually, I didn't have a conversation
12    with him.  I heard him talking about his
13    insurance with somebody else in the
14    courtroom.  So I don't recall.  I mean, I may
15    have been standing nearby.  I don't think we
16    were talking back and forth to each other
17    necessarily.  But I heard him indicate he
18    still had his insurance, and he was happy
19    about it or pleased with the insurance and
20    its coverage.  And I recall hearing that and
21    thinking, well, that's strange because
22    Mr. Davis had told me months earlier that it
23    was going to be terminated.

Page 76

1   Q.  Did he say I still have insurance with the
2     City?
3   A.  Well, he was -- maybe not in those words, but
4     what -- his comments were indicative of
5     having it and being happy he had it because
6     of the coverage it afforded.
7   Q.  But you don't know if he paid for that or
8     not?
9   A.  Well, no, he told he didn't pay for it when
10    we first spoke about it.
11  Q.  I'm talking about the second incident.
12  A.  No.  I mean, I don't recall him saying
13    anything about him paying for it.
14  Q.  You know if it was Blue Cross Blue Shield
15    Insurance he was talking about?
16  A.  No.  He just referenced it as insurance
17    through the City.
18  Q.  What specifically did he say about the
19    insurance?
20  A.  I don't remember specifically.  I remember
21    overhearing enough to conclude from the
22    statements that he still had the insurance
23    after Mr. Davis told me he could not have it,

Page 77

1     nor could I have it.
2   Q.  Who was he speaking to?
3   A.  I don't remember.  But some -- I believe it
4     was an attorney, although I'm not sure.  I
5     mean, it was somebody that they were off at
6     the side of the bench talking near the
7     prosecution table, and I was there and
8     listening; and I don't think I had any part
9     of the conversation.
10  Q.  Could you have misconstrued anything that was
11    said in that conversation that you were --
12  A.  Oh, no.
13  Q.  -- I guess eavesdropping in on?
14  A.  Oh, no, because we now know he did have
15    insurance.
16  Q.  How do you know that?
17  A.  Well, because the City said he did.
18  Q.  At the mediation?
19  A.  No, they said he had insurance after
20    Mr. Davis told me it was going to be
21    terminated.
22  Q.  How?
23  A.  Right?

JERRY M. BLEVINS v. CITY OF TUSKEGEE, ET AL.                    2/27/2008
DEPOSITION OF JERRY BLEVINS

21 (Pages 78 to 81)

Page 78

1  Q. Where?
2  A. Where what?
3  Q. You said the City has told you that he had it
4     after it was going to be terminated. Where
5     has that been said? I know I said something
6     like that in mediation. That's what I
7     thought. I was incorrect.
8  A. Right.
9  Q. What else other than the statement at the
10    mediation that you know is not going to be
11    admissible in court -- how do you know he had
12    insurance after you made this complaint that
13    he did have it and shouldn't have it or that
14    you wanted it and couldn't get it?
15 A. How do I know he still had it?
16 Q. Right.
17 A. Because he said he did.
18 Q. Anything other than that?
19 A. Not that I can think of right offhand, no.
20 Q. Do you know about when that statement that
21    you heard took place?
22 A. Oh, yeah. It was near my -- somewhere around
23    near my termination; because once that issue

Page 79

1     resurfaced, I was immediately terminated.
2  Q. How did it resurface? Did you complain
3     again?
4  A. I would have to look at my letters to try
5     and -- there should be a letter I sent to
6     Mr. Davis. That's why I send so many letters
7     so I can look back at them and not have to
8     guess at what I did when.
9  Q. I understand. And I think there was a letter
10    that talked about insurance. I guess I need
11    to know now was that your first letter or
12    second letter or what happened before that?
13 A. I believe this may be it, Plaintiff's
14    Exhibit 6.
15 Q. What's the date on that?
16 A. March 1, '07.
17 Q. Okay. Okay.
18 A. Yeah. Okay. You know, if my dates are
19    correct, I sent this letter March 1, '07; and
20    then I was notified that I was terminated that
21    afternoon, unless I'm mistaken on the date.
22 Q. Let's check that. Let me introduce this as
23    my Defendants' Exhibit #3. That's city

Page 80

1     council minutes from February 7th, 2007.
2     Have you ever seen that?
3  A. No.
4  Q. Look through it and find the highlighted
5     part. That's the minutes where they're
6     appointing Keith Thomas as the prosecutor.
7     It's on page -- fax page 10, something like
8     that.
9  A. This is unsigned by anybody?
10 Q. It's a whole lot easier to print it off the
11    computer than it is to get that big book on a
12    copier. You may dispute the authenticity.
13    You may not. I don't know.
14 A. If this is dated before March 1st, I
15    certainly dispute the authenticity of it.
16    Obviously, because nobody even notified me of
17    this supposed action, which would indicate
18    this is not an authentic document.
19 Q. Okay. You think I just made that up?
20 A. No, I think somebody's given to it to you and
21    misled you, is what I think. But yeah, I
22    mean, I'm looking at this unsigned document
23    that appears it's supposed to be some minutes

Page 81

1     of a meeting of February 27, '07.
2  Q. Do you have the letter that Mr. Davis sent
3     you telling you about Keith Thomas?
4  A. Is that out here somewhere?
5  Q. I think so. I'm not positive. Yes, it is.
6     A letter you marked as Plaintiff's Exhibit 5
7     refers to February 27th, 2007.
8  A. Right. The one with the year 1007 on the top
9     of it.
10 Q. Right.
11 A. Yeah, this letter references a supposed
12    council meeting on February 27th, correct.
13 Q. Did those letters cross in the mail? They're
14    both dated -- I may be wrong. March 1st,
15    2007, and that one should be March 1st --
16    well, it is March 1st. It's got 1007. Did
17    those letters pass in the mail or do you
18    know?
19 A. Well, this one was faxed to Mr. Davis on
20    March 1st and mailed to him. So he received
21    that on March 1st. And then if I recall
22    correctly, I spoke with Mr. Davis that
23    afternoon after that letter was faxed to him.

JERRY M. BLEVINS v. CITY OF TUSKEGEE, ET AL.                    2/27/2008
DEPOSITION OF JERRY BLEVINS

22 (Pages 82 to 85)

Page 82

1   And he told me during that discussion that I
2   had been terminated. He didn't mention a
3   February 27 meeting of anybody. He just said
4   the council has decided to terminate you.
5   And they've appointed Keith Thomas. All
6   right. This -- this letter was received
7   nowhere around March 1st, 2007. This letter
8   came a substantial period of time after March
9   1st, was received by me -- was received
10   nowhere around March 1st. So I mean, yeah, I
11   mean, I think the Exhibit 5 is a manufactured
12   document to try and claim that I had been
13   terminated prior to receipt of my March 1st
14   letter.
15  Q. And I guess the city council minutes from
16   February 27th have been fabricated, too?
17  A. Well, are you talking about these unsigned
18   documents you're giving me here that are
19   supposed to be minutes?
20  Q. Right.
21  A. Yeah, because I -- well, I think it's
22   reasonable to conclude if I had been
23   terminated on February 27th, I would have

Page 83

1   been sent notice. And I was not. So yeah, I
2   suspect those are manufactured, yes.
3   Q. The issue about insurance came up right after
4   you were appointed, correct? And then you
5   were told that you're not entitled to it.
6   And I guess you let it go at that until you
7   heard Judge Bulls talking about it about a
8   year later?
9   A. I don't know if I will say a year.
10  Q. Or some time period.
11  A. Mr. Davis told me I couldn't have it after I
12   contacted him. I accepted that. And he told
13   me he was going to terminate Bulls' and I
14   accepted that. Now, if he had said you can't
15   have it but we're going to let Bulls continue
16   to have it, I probably would have said, wait
17   a minute; why are you treating us
18   differently? But he didn't say that.
19  Q. Well, let's don't talk about it, then. I
20   don't want to mess the record up. It came
21   up. He said, I'm going to -- Judge Bulls is
22   not entitled to it; I'm going to end his
23   contract. Is that basically what he told

Page 84

1   you?
2   A. Yeah. Yeah. Yeah.
3   Q. Did it ever come up before you heard
4   Judge Bulls talking to another lawyer in
5   court while you were standing around close
6   enough to hear?
7   A. No, I don't recall it ever coming up between
8   that time, no.
9   Q. From the day in court until you sent that
10   letter that's marked Plaintiff's Exhibit 6,
11   dated March 1st, 2007, did insurance come up
12   at all before you sent that second letter?
13  A. I can't say for certain because my letter of
14   March 1st indicates a discussion that I had
15   had with Mr. Davis a few months back as to
16   whether I was entitled to health insurance
17   coverage. You know, we may have had a third
18   discussion. How ever many discussions we
19   had, Mr. Davis made clear that I could not
20   have the health insurance. It may have been
21   two or three. I'm not sure.
22  Q. When was your first claim of race
23   discrimination?

Page 85

1   A. When I discovered they misled me and Bulls
2   had the coverage.
3   Q. That letter right there?
4   A. No.
5   Q. Plaintiff's Exhibit 6?
6   A. Let's see. My letter indicates that
7   information that has recently come to my
8   attention around March 1st was that Bulls
9   still had the coverage.
10  Q. Okay. When did you first say I'm being
11   discriminated because I'm white or I've been
12   discriminated for any reason? I'm just
13   trying to put all this in a date.
14  A. Yeah. I believe that would be my March 1st,
15   2007 letter.
16  Q. That's the first time you used the word
17   racial discrimination. And I tell you, I
18   haven't seen anything else before that.
19  A. Well, that I -- the first time I used it in a
20   written letter, yes.
21  Q. What about making a claim orally or anything?
22  A. Well, no formal claim. I mean, I always
23   wondered why the disparate treatment existed

JERRY M. BLEVINS v. CITY OF TUSKEGEE, ET AL.                    2/27/2008
DEPOSITION OF JERRY BLEVINS

23 (Pages 86 to 89)

Page 86

1    between me and Bulls where everybody was
2    overlooking his misconduct repeatedly and
3    doing nothing, but yet calling me in to
4    address allegations he made.  I mean, it
5    always puzzled me as to why things were being
6    handled differently between the two of us.
7  Q. Just let me get it straight.  The first time
8    that you told anybody about it or made a
9    claim, whatever you were thinking -- the
10   first time you let somebody from the City of
11   Tuskegee know about possible discrimination
12   was in your March 1st, 2007 letter; is that
13   correct?
14 A. Well, no.  I mean, I discussed it with
15   people.
16 Q. Who?
17 A. The disparate treatment.
18 Q. Who?
19 A. I mean, my wife.
20 Q. Who from the City of Tuskegee?
21 A. Oh, well, I mean, if I'm limited to that.
22 Q. Your wife can't do anything about
23   discrimination here, can she?

Page 87

1  A. No, I was just making observations as to what
2    the goings on in Tuskegee and what appeared
3    to be going on to, you know, other people.
4  Q. Okay.  I'm limiting it to officials from the
5    City of Tuskegee.
6  A. No.  Mr. Davis would have been the only
7    person I ever would have mentioned that to.
8  Q. And that came on March 1st, 2007?
9  A. I would -- yeah, I would say so, yeah.  I
10   don't recall ever mentioning it to him
11   before.
12 Q. In your notice of discrimination, you said
13   that your contract as city prosecutor was
14   terminated on March 2nd, 2007.  What made you
15   say that date?  You can look at it right here
16   if you want to.
17 A. Yeah, that's what somebody actually typed for
18   me based on what I said.  But if I remember
19   correctly, the conversation where Mr. Davis
20   actually told me I had been terminated was on
21   March 2nd.  It wasn't -- I think I said
22   earlier it was the afternoon of March 1st,
23   but now that you've shown me that, it was the

Page 88

1    following day that we had a phone discussion
2    where he told me I had been terminated.
3    Yeah.  I guess let me clarify that, because
4    what he actually told me was something to the
5    effect the City has appointed a new
6    prosecutor, Keith Thomas.  And I said, okay.
7    Am I still supposed to -- am I still the city
8    prosecutor?  And he indicated he was
9    uncertain.  I said, Well, am I supposed to
10   show up in court?  Do we have two prosecutors
11   or what.  And he expressed uncertainty about
12   it.  And I finally said, Well, can you check
13   and see if I'm still supposed to show up or
14   not?  He said, Well, I'll have to get with
15   the mayor and ask him about that.  Because he
16   expressed uncertainty as to whether I had
17   been terminated or not on March 2nd.  He said
18   he would have to check on it and get back
19   with me in answer to the question whether
20   there were now two prosecutors or one.
21 Q. Here's the complaint I referred to earlier.
22   I'm just going to mark that as Defendants'
23   Exhibit #4.  And I think we've covered breach

Page 89

1    of contract, fraud and negligence.  Now that
2    you have that before you, those are the only
3    claims in the complaint now?
4  A. Right.  But I mean, you know, obviously,
5    there's agency issues and other things
6    embodied in those complaints.  But those are
7    the three complaints that are set out.
8  Q. I'm going to show you what I've marked as
9    Defendants' Exhibit #5.  Can you identify
10   that document?
11 A. Yeah.  This would appear to be the claim I
12   filed against the City of Tuskegee.
13 Q. Do you mention anything in there about fraud
14   or negligence?
15 A. I would have to look at it and see.
16 Q. I don't know.  I don't remember.
17   MR. HOWARD:  Make sure you've got the
18     exhibits before I get up.  I've
19     been known to take them away.
20 A. You know, this notice only requires certain
21   things.  It's not necessary to plead it with
22   the specificity of a complaint filed in
23   court.  But the notice I filed sets out the

JERRY M. BLEVINS v. CITY OF TUSKEGEE, ET AL.                    2/27/2008
DEPOSITION OF JERRY BLEVINS

24 (Pages 90 to 93)

Page 90

1 facts and makes a monetary claim. To tell
2 you the truth, I don't know if I was aware at
3 the time I filed this that I had been
4 defrauded because I didn't really know the
5 City's position at that time on the issues.
6 So I don't see where fraud is specifically
7 set out, but I think it's sufficient to put
8 them on notice of -- of what's required.
9 Q. What about negligence?
10 A. Well, I mean, you know, until -- until I
11 found out facts as a result of this lawsuit,
12 I didn't know anything about negligence.
13 Q. Okay. I'm just asking if it's in the notice
14 of claim. Not a legal theory of why it
15 should or should not be or does not have to
16 be.
17 A. I don't know. I've skimmed this thing. I
18 haven't sat here and read it word for word.
19 If it's in here, it's in there. If it's not,
20 it's not. I can't tell you without sitting
21 here reading it.
22 Q. Is there anything in there that mentioned a
23 negligent act specifically as negligence?

Page 91

1 A. No. I didn't know he was taking the position
2 that he had acted negligently until the
3 lawsuit was filed.
4 Q. So the answer is no, there's nothing in there
5 that refers to the negligence cause of
6 action?
7 A. I -- I don't know. I think the thing speaks
8 for itself. Either it's in there or it's
9 not.
10 Q. Have you ever seen a law that says all
11 municipal contracts have to be attested to by
12 the clerk?
13 A. Yeah, under certain circumstances.
14 Q. What are they?
15 A. Well, if I remember correctly, if the
16 contract concerns the appropriation of more
17 than one year but no more than five years.
18 In other words, if a position is paid based
19 on the annual appropriations, it's not
20 necessary. And if it does not exceed five
21 years in duration, it's not necessary.
22 Q. Did you ever go to any city council meetings?
23 A. No.

Page 92

1 Q. When you earlier testified that you have met
2 with the city council on at least a couple of
3 occasions, to address the Bulls situation and
4 the interview, did you ever meet with the
5 city council other than those two instances?
6 A. No. I asked to meet with them on several
7 different occasions and never got an
8 audience. No, just those two.
9 Q. So the answer is no?
10 A. Just those two would have been it.
11 Q. How much time per week did it take to be the
12 prosecutor?
13 A. Well, it varied. But normally, I'd leave
14 Montgomery around eight, get here at a
15 quarter to nine. And I would say on average
16 leave, you know, between 12 to two. But it
17 varied, just depending on how many cases you
18 had and how long it took.
19 Q. How many days a week?
20 A. Every Thursday.
21 Q. So on the average, about four hours a week or
22 five hours a week?
23 A. Well, then it would take me an hour -- you

Page 93

1 talk about travel time. Take me about 45
2 minutes to go back to Montgomery. So my
3 whole Thursday was pretty much shot in coming
4 and going.
5 Q. So if you take out travel time, how much time
6 did you spend on the job?
7 A. Well, you know, on average from nine a.m. to
8 -- and sometimes we got done at 10:30,
9 sometimes we got done at three. So I mean,
10 I'd say if we had to average it, nine to
11 12:30, somewhere in that range.
12 Q. You've talked to Anita Hamilton about this
13 situation?
14 A. Angela.
15 Q. Angela. I'm sorry.
16 A. No, I haven't had any contact with Angie
17 since she gave me a Christmas present, must
18 have been the year before last.
19 Q. 2006?
20 A. I believe it was. I don't think it was this
21 past Christmas. I'm thinking it was '06.
22 Q. Were you still the prosecutor when she gave
23 you the Christmas present?

Page 94

1  A. Yeah.
2  Q. Do you socialize with her any outside of
3     work?
4  A. No.
5  Q. Was she an employee -- she's still an
6     employee with the City of Tuskegee, isn't
7     she, or do you know?
8  A. I have no idea.
9  Q. Other than Ms. Hamilton, Judge Bulls, members
10    of the city council and Mr. Davis, have you
11    spoken to anybody with the City of Tuskegee
12    about the facts giving rise to this lawsuit?
13 A. With the City of Tuskegee?
14 Q. Employed by them.
15 A. Yeah, I spoke with the personnel lady.
16 Q. Right. About the insurance?
17 A. Yeah. Ed Raymon is not an employee. I've
18    spoken with him.
19 Q. What did you speak to him about?
20 A. About whether he had insurance.
21 Q. And what did he say?
22 A. He said he never inquired about it or
23    anything because he had his own and wasn't

Page 95

1     interested.
2  Q. Anybody else?
3  A. I can't think of anybody else.
4  Q. Do you think accepting the employment here
5     is something that you just didn't understand
6     or you got into something you didn't
7     understand?
8  A. No, I understood it clearly.
9  Q. Why do you think you're entitled to
10    $2,500,000 for racial discrimination and
11    the denial of health insurance benefits?
12 A. Because people shouldn't discriminate
13    against people because of their race.
14 Q. Why do you think you've been discriminated
15    against on the basis of your race?
16 A. There's no other reason. What other reason
17    could there be?
18 Q. Talking about the insurance?
19 A. Yeah. I mean, I was denied health
20    insurance. I'm white. A black person in
21    the same or substantially similar position
22    has insurance.
23 Q. Why do you think that was a similar position

Page 96

1     as a judge?
2  A. Because we were both appointed as Mr. Davis
3     said.
4  Q. Any other reasons?
5  A. No. He's told me we're in the same job
6     classifications in the past.
7  Q. Who has?
8  A. Mr. Davis.
9  Q. When?
10 A. Well, it's in one of my letters I sent him
11    documenting our discussion. I don't
12    remember the date, but it's in one of these
13    letters we can pull out, and it will give us
14    the date.
15 Q. Let's take it that he did say it's in the
16    same classification. What about the duties?
17    Are your duties similar to that of the
18    judge?
19 A. No. No. Obviously not.
20 Q. What about your pay? Do you know whether
21    your pay was similar to that of the judge?
22 A. I really don't have any idea.
23 Q. Why are you entitled to $2,500,000 for

Page 97

1     racial discrimination as a basis for
2     termination of contract of employment as
3     city prosecutor?
4  A. Shouldn't discriminate against people based
5     on their race. And when you do, there's
6     consequences that go along with it.
7  Q. So you think the City owes you $7,519,000.
8  A. That's what the claim was for. To tell you
9     the truth, I don't think that's enough. I
10    think they ought to have to pay more.
11    Because for Tuskegee with its historical
12    significance, to discriminate I think is
13    outrageous. And to discriminate against me
14    when I was trying to protect an African
15    American who was being attacked by another in
16    municipal court I think is more outrageous.
17    So this whole thing is outrageous, and it
18    calls for an outrageous judgment.
19 Q. Do you think you were fired because you were
20    trying to protect somebody or because they
21    were discriminating against you on the basis
22    of your race?
23 A. I can't speculate as to why people do things

JERRY M. BLEVINS v. CITY OF TUSKEGEE, ET AL.                                    2/27/2008
DEPOSITION OF JERRY BLEVINS

26 (Pages 98 to 101)

Page 98

1   they shouldn't do. All I can tell you is
2   when I notified the City that I thought I was
3   being discriminated against about health
4   insurance, I was notified within 24 hours I
5   was terminated.
6   Q. Were you terminated -- weren't you notified
7      that the termination happened three days
8      before the alleged discrimination?
9   A. No, I was never told that, no, until these
10     documents magically appeared in an attempt
11     to indicate that.
12  Q. Defendants' Exhibit #5, your notice of
13     claim, there's a paragraph in there that
14     says, Around January 4, 2007, you learned
15     that Judge Bulls had insurance. Is that
16     the date that you were eavesdropping on
17     his conversation?
18  A. You can't eavesdrop on somebody's
19     conversation when they're talking out in
20     a public setting where it can be overheard
21     by others. So no, I wasn't eavesdropping.
22     Fortunately, I overheard him disclose
23     information about the City's wrongdoings

Page 99

1   and have now addressed it. If that's what
2   my letter indicates, then I don't generally
3   put things in letters that are untrue. So
4   I would have to assume that is the accurate
5   date since that's what I put in the letter
6   almost a year ago.
7       MR. HOWARD: I think we're about
8          through. Let me look over
9          my notes. We're about
10         through.
11         (Brief pause)
12  Q. Did you ever talk to Gwen Hughley about any
13     of this stuff?
14  A. No, the only thing I remember talking to
15     her about is something dealing with my mail
16     and my mailbox over there. But other than
17     that, I don't remember speaking with her
18     about anything.
19  Q. Okay. Do you know whether Judge Bulls was
20     offered COBRA after his insurance contract
21     was canceled?
22  A. Not based on what I heard him say, no.
23  Q. What did you hear him say?

Page 100

1   A. That he had insurance through the City.
2      That wouldn't typically mean to me
3      somebody had COBRA insurance. But no,
4      not based on what he said, that wasn't my
5      understanding.
6       MR. HOWARD: That's all I've got.
7          (The deposition concluded
8          at 1:54 p.m.)
9       * * * * * * * * * *
10     FURTHER DEPONENT SAITH NOT
11     * * * * * * * * * *

Page 101

1           REPORTER'S CERTIFICATE
2   STATE OF ALABAMA
3   MONTGOMERY COUNTY
4       I, Mallory M. Johnson, Certified Court
5   Reporter and Commissioner for the State of
6   Alabama at Large, hereby certify that on
7   Thursday, February 27, 2008, I reported the
8   deposition of JERRY MICHAEL BLEVINS, who was
9   first duly sworn or affirmed to speak the truth
10  in the matter of the foregoing cause, and that
11  pages 4 through 100 contain a true and accurate
12  transcription of the examination of said witness
13  by counsel for the parties set out herein.
14      I further certify that I am neither of
15  kin nor of counsel to any of the parties to said
16  cause, nor in any manner interested in the
17  results thereof.
18      This 25th day of March, 2008.
19
20
    _____
    MALLORY M. JOHNSON, COURT REPORTER
21  And Commissioner for the
    State of Alabama at Large
22  Alabama License Number: 443
    Expires 09/30/08
23
    MY COMMISSION EXPIRES: 2/24/09

JERRY M. BLEVINS v. CITY OF TUSKEGEE, ET AL.
DEPOSITION OF JERRY BLEVINS

2/27/2008

Page 1

## A

able 28:9 74:16
abuse 40:6 56:8
abuses 38:5
abusing 35:19 58:2
accept 30:4
acceptance 19:12
  19:17
accepted 18:8 19:8
  44:10 47:10
  83:12,14
accepting 20:3
  95:4
accurate 99:4
  101:11
accusations 58:8
act 16:13,22 53:19
  90:23
acted 31:13 37:22
  62:15 91:2
acting 39:12
action 1:8 39:11
  45:19 67:18
  80:17 91:6
active 67:7
acts 38:2 42:13
additional 15:16
address 8:16 38:6
  55:9 62:8 69:12
  69:23 86:4 92:3
addressed 55:6
  62:9 71:18 99:1
addressing 43:8
adjust 21:16
administration
  54:9
admissible 78:11
ads 11:9
affirmed 101:9
afforded 76:6
African 97:14
afternoon 79:21
  81:23 87:22
age 5:4
agency 89:5
ago 10:10 74:4

99:6
agree 16:3 21:19
  21:22 26:5 36:15
  59:7,10 60:13,15
agreed 3:2,18 4:1
  59:3,4 60:14
agreement 1:15
  3:5 19:13 44:10
ahead 49:5
Air 6:9 7:5,6
al 1:9
Alabama 1:3,18,20
  2:4,9 3:10,16
  8:17 20:20 101:2
  101:6,21,22
AlaCourt 67:6
Alfred 2:11 15:2
  50:8
allegation 15:13
  58:1,6
allegations 35:21
  35:23 39:4 55:3
  69:13,23 86:4
allege 28:14
alleged 17:20 28:3
  98:8
alleging 10:4
alter 34:5
alternative 16:15
  16:16 17:4
amend 15:15
American 97:15
Angela 93:14,15
Angie 29:4 93:16
angry 73:23
Anita 93:12
Anniston 5:14
annual 91:19
answer 31:23
  59:13 62:3,11
  88:19 91:4 92:9
answered 49:4
anybody 9:19
  22:17 35:1 42:6
  59:3 62:19 80:9
  82:3 86:8 94:11

95:2,3
apologize 71:8
appalled 42:4
apparently 17:2
  38:23 40:4 55:23
  60:14
appealed 36:9 73:2
appeals 72:11
appear 43:16
  89:11
APPEARANCES
  2:1
appeared 73:22
  87:2 98:10
appears 15:7 23:17
  33:23 80:23
application 8:3
  16:10 18:23 29:8
applications 20:4
  31:4
applied 23:3 26:19
  30:11 32:9
apply 16:8
appoint 16:4 20:17
  49:20 52:5
appointed 8:1 20:5
  22:1 37:3 41:14
  41:15,18 46:12
  46:18 47:7 48:12
  70:7,18 73:9,13
  73:15 74:2 82:5
  83:4 88:5 96:2
appointee 21:22,23
appointees 50:4
appointing 19:11
  80:6
appointment 16:20
  18:7 22:3,18 23:1
  29:1 30:4 41:10
  54:11,14 75:4
appoints 20:6 21:4
  23:16
appropriate 38:4
appropriation
  91:16
appropriations

91:19
approve 35:17
approved 24:15
approximately
  1:22
area 6:23 8:13
arose 40:23
arrested 14:16
arrive 35:12
aside 45:9
asked 7:20 13:1
  32:16 43:14 55:9
  59:21 60:10
  63:15 92:6
asking 13:14 27:8
  49:1 50:12 59:6
  64:12 90:13
assault 41:23
  42:22
assaulted 43:3
assaults 35:19
assessing 40:3
assisted 74:3
Association 13:14
assume 14:5 99:4
assumed 23:6
atrocious 42:9
attack 62:2,2
attacked 44:13
  97:15
attempt 98:10
Attempted 41:8
attend 67:16
attention 38:4 73:6
  85:8
attested 91:11
attorney 10:13
  14:13 26:16
  45:12 59:15 77:4
attorneys 2:8 73:7
attorney's 59:23
Auburn 9:10
audience 92:8
August 68:6
AUM 9:14,15
authentic 80:18

authenticity 80:12
  80:15
automatically
  23:11
availability 28:18
available 28:19
average 92:15,21
  93:7,10
aware 52:12 59:1
  71:1 90:2
a.m 1:22 93:7

## B

back 31:15 32:22
  33:21 41:6 60:10
  64:23 75:16 79:7
  84:15 88:18 93:2
background 9:9
  43:5
bad 31:22,22
bankruptcy 14:14
bar 7:18,20 8:4
  11:10 12:9 13:2
  13:11,14,15
  38:13 57:21
based 17:17 18:6
  23:18 28:4 34:7,8
  34:10 35:13
  47:10 87:18
  91:18 97:4 99:22
  100:4
basically 24:9
  83:23
basis 41:20,21
  95:15 97:1,21
BC&BS 2:19
beat 43:8 61:4,4,5
beating 61:1
beef 61:2
began 41:2
behalf 19:19
behavior 42:4
believe 15:12 20:6
  20:19 22:22 24:7
  28:15 33:10,15
  34:15 36:2 39:23
  46:5,8 50:11

JERRY M. BLEVINS v. CITY OF TUSKEGEE, ET AL.                     2/27/2008
DEPOSITION OF JERRY BLEVINS
Page 2

52:16,19 56:10
63:19 77:3 79:13
85:14 93:20
**believed** 29:13
56:6,7,12
**believing** 56:2,3
**BellSouth** 11:7
**bench** 58:12,20
77:6
**benefits** 95:11
**berate** 40:5 44:20
45:5
**berating** 44:4
**big** 8:10 80:11
**birth** 4:16
**bit** 75:8
**black** 95:20
**blaming** 61:3
**Blevins** 1:6,14 2:3
2:3,14 3:4 4:6,13
5:1,10,11,13 72:3
101:8
**blew** 70:16
**Blue** 31:1 32:2,11
32:22 76:14,14
**board** 8:14
**book** 11:20 80:11
**bother** 36:8 72:4
**brain** 11:22
**breach** 15:7,21
16:2 18:5 48:1
51:10 88:23
**Brief** 99:11
**briefly** 63:11
**bring** 15:16 38:3
55:21
**bringing** 55:22
**brother** 5:12 7:8
**brother's** 6:1
**brought** 22:12
48:17 52:11
55:14,16
**BS** 9:10
**buddy** 62:10
**Bulls** 13:2,10 24:8
24:19,21,22

25:19 32:16,17
32:19 33:9,13
34:17,18 35:6
38:14 39:17,23
41:8,9,17 43:16
44:9,9,18 45:16
46:7 48:3,4,20,23
51:18 52:10,15
53:2 54:18,22
55:2,8,12,21 56:2
58:4,20 61:9,14
61:21 62:15
63:21,23 64:2
65:3,6,16 69:12
69:12,23 70:2,11
70:20 71:3,20
73:11 74:6,13
75:7 83:7,13,15
83:21 84:4 85:1,8
86:1 92:3 94:9
98:15 99:19
**business** 57:20
**buy** 35:8 53:6,7

──────── **C** ────────
**call** 22:5 64:16
65:23 74:21
**called** 58:11 64:2,5
64:15,23 65:10
66:8 71:20 75:4
**calling** 21:21 41:4
64:3 86:3
**calls** 97:18
**campaign** 74:3
**cancel** 31:7
**canceled** 30:20
31:2 34:11 99:21
**cancellation** 34:13
**canons** 39:1
**capacity** 45:11
**car** 7:7
**careless** 16:17,23
**Carmellia** 42:20
61:22 64:7,16
65:16 70:15 75:9
**Carmichael** 2:8,9
**Carol** 5:1

**case** 1:8 3:22 27:11
34:20 43:8,16
44:15,16 45:8,13
46:16 58:3,11,13
58:19 59:11,14
60:3 67:17 73:1
**cases** 10:7 12:3
21:15,16,17,17
22:11 35:15 36:9
58:21,22 73:3,9
73:14,20 92:17
**cause** 51:4,8 91:5
101:10,16
**Center** 2:8
**certain** 8:6 10:15
17:1 28:9 51:20
54:15 84:13
89:20 91:13
**certainly** 37:9
80:15
**CERTIFICATE**
101:1
**Certified** 1:16 3:8
101:4
**certify** 101:6,14
**challenged** 45:8
**change** 24:12 34:5
65:13
**charge** 57:22
**charged** 57:14
59:15
**charges** 15:17
**Charles** 5:10,19
6:2
**check** 79:22 88:12
88:18
**checked** 67:6
**checks** 57:12
**Chief** 67:2
**child** 6:11
**child's** 60:1
**Christmas** 93:17
93:21,23
**church** 8:7,10,10
**Cindy** 8:23
**circuit** 1:1 11:14

36:9,12 44:7
67:10,16 68:9
72:12 74:3
**circumstances**
91:13
**circus** 55:8
**cities** 50:3
**city** 1:9 2:20,21
13:9 14:23 15:1,8
15:11,14,22 16:9
16:11 18:20 19:7
19:19 20:2,13,13
20:16 21:5,8,12
22:2,23 23:15
25:1,4,20 26:1,6
26:10,11,15
28:20 30:12,22
31:4,9,18 32:2,3
32:10 34:9,19
35:2,11,14,20,21
36:16 39:14,20
44:8,15 45:10,15
46:8,19 47:5,14
50:6,15,22 51:1
53:3,6 54:21 55:6
55:13,19 57:6
58:8 60:20 61:3
62:14 66:18
67:10 68:21 69:5
72:21 73:15,18
74:11,17 76:2,17
77:17 78:3 79:23
82:15 86:10,20
87:5,13 88:5,7
89:12 91:22 92:2
92:5 94:6,10,11
94:13 97:3,7 98:2
100:1
**City's** 17:14 29:13
34:18 90:5 98:23
**civil** 1:8 3:17 6:8
50:19
**claim** 16:22 17:15
17:17,23 18:2
33:5,6 82:12
84:22 85:21,22

86:9 89:11 90:1
90:14 97:8 98:13
**claiming** 14:22
15:5,10 27:20
28:1
**claims** 2:23 10:14
12:3 89:3
**clairvoyant** 42:11
**clarify** 88:3
**classification**
96:16
**classifications** 96:6
**clear** 24:5 49:22
84:19
**clearly** 21:3 42:16
64:17 95:8
**clerk** 72:20 91:12
**clerks** 50:4
**clerk's** 69:1
**client** 14:19 54:3
57:4
**clients** 12:2 35:22
39:18 44:19,23
**clinic** 6:11
**close** 84:5
**club** 43:9
**COBRA** 99:20
100:3
**code** 23:18 48:17
**collect** 43:13 44:12
68:22
**collector** 44:2
**come** 11:18 32:18
58:14,15 73:6
84:3,11 85:7
**comes** 10:16 28:7
43:2 50:4 57:21
61:2
**coming** 84:7 93:3
**commencing** 1:21
**comments** 76:4
**commission** 3:11
13:3 38:15 39:11
40:5,12 64:22
65:18 101:23
**Commissioner**

JERRY M. BLEVINS v. CITY OF TUSKEGEE, ET AL.                    2/27/2008
DEPOSITION OF JERRY BLEVINS

Page 3

| | | | | |
|---|---|---|---|---|
| 1:17 3:9 101:5,21 | 58:5 | 65:6 | 29:2,3,5 35:17 | 31:2,3 34:2,12 |
| committed 57:12 | confusion 31:13 | conviction 45:9 | 36:5,7,9,12,19 | 51:3,14 54:15 |
| 57:23 | connection 57:15 | cooled 70:12 | 37:10 38:2,5,7 | 61:11 68:2 71:17 |
| Committee 70:21 | consecutive 41:3 | copied 72:20 | 40:6,23 42:3 43:2 | 72:2 79:15,21 |
| common 54:13 | consequences 97:6 | copier 80:12 | 43:18,19 44:1,7,8 | 85:13 87:15 |
| communication | consider 19:10 | copy 15:2 | 44:8,13 54:18 | 96:12,14 98:16 |
| 32:11 | 21:7 | corporation 10:11 | 58:11 61:17,18 | 99:5 |
| communications | considered 21:9 | correct 18:11 22:4 | 62:4,22 64:11,19 | dated 33:4 80:14 |
| 62:6 65:21 | conspiracy 38:13 | 22:13 24:6,9,10 | 66:8 67:9,10,10 | 81:14 84:11 |
| company 10:19 | 39:9,10 | 24:13 25:9,12 | 67:17 68:9 71:17 | dates 61:19 65:20 |
| compensate 35:7 | constitute 19:3 | 26:8 28:4 30:10 | 72:2,6,12 73:9,18 | 65:22 79:18 |
| competence 57:10 | constitutes 22:7 | 36:21 37:11 | 74:12 78:11 84:5 | Davis 2:11 15:2,7,8 |
| complain 13:11 | construction 10:3 | 38:20 46:13 47:3 | 84:9 88:10 89:23 | 15:9,22 16:3,9,12 |
| 28:21 79:2 | contact 62:21 67:2 | 52:2,22 63:6 | 97:16 101:4,20 | 19:1,18,22 20:16 |
| complained 13:8 | 93:16 | 79:19 81:12 83:4 | courteous 54:20 | 20:23 22:21 |
| complaint 2:22 | contacted 32:13 | 86:13 | courtroom 44:5 | 23:15 24:18 |
| 12:22 13:13 15:3 | 83:12 | correctly 69:1 | 75:14 | 25:17 32:13,17 |
| 15:15 27:12 | contacting 7:23 | 73:20 81:22 | courts 66:13,14 | 33:2,14 37:16 |
| 34:16 36:11 38:8 | contain 101:11 | 87:19 91:15 | cover 52:7 | 46:4,21 47:6,20 |
| 38:10 41:1,7 | contained 44:10 | corrupt 60:4 | coverage 28:19 | 50:8 55:4 62:18 |
| 52:13,20 53:1 | contemplating | cost 31:17 | 30:20 31:5,7,10 | 63:13 64:15,23 |
| 60:18 78:12 | 46:3 | council 2:21 20:16 | 31:18 32:13,15 | 66:8 68:12,15,16 |
| 88:21 89:3,22 | contemptuously | 21:1 22:23 23:16 | 33:13 34:19 | 68:16 74:21 75:5 |
| complaints 12:9,23 | 44:4 | 23:22 25:1,4 37:7 | 52:11 53:2 74:12 | 75:22 76:23 |
| 13:2,15,20,23 | continue 83:15 | 39:14 46:8,19 | 75:20 76:6 84:17 | 77:20 79:6 81:2 |
| 14:1 89:6,7 | continued 34:17 | 47:5 48:22 49:7 | 85:2,9 | 81:19,22 83:11 |
| computer 80:11 | 53:2 | 49:15 54:22 55:5 | covered 29:13 | 84:15,19 87:6,19 |
| concerning 10:2 | continues 25:6 | 55:6,13,17,19 | 30:13,22 31:12 | 94:10 96:2,8 |
| 28:18 63:4 | contract 15:7,21 | 56:1 58:8 60:20 | 31:16 32:1,7 | Davis's 17:7,14 |
| concerns 71:18 | 15:22,23 16:2 | 69:5,20 70:4,5 | 88:23 | 18:10 53:20 |
| 91:16 | 18:6,9 19:19,23 | 72:21 80:1 81:12 | crazy 10:13 13:20 | day 28:23 29:2 |
| conclude 76:21 | 34:1 46:20 48:2 | 82:4,15 91:22 | 13:20 | 44:14 62:4 84:9 |
| 82:22 | 51:2,4,7,10,11,14 | 92:2,5 94:10 | created 36:18 | 88:1 101:18 |
| concluded 100:7 | 56:20,22 83:23 | Councilwoman | credibility 40:3 | days 92:19 98:7 |
| concrete 34:3 | 87:13 89:1 91:16 | 22:21,22 | crime 59:16 | deal 60:3 64:18 |
| condescending | 97:2 99:20 | counsel 3:3,19 | crimes 57:22,23 | 66:7,10,12 |
| 66:5 | contracts 91:11 | 101:13,15 | criminal 45:8 | dealing 62:21 |
| condition 69:3 | contrary 33:14 | counselor 14:9 | criminally 57:14 | 71:15 99:15 |
| conditionally 69:2 | control 41:9 | count 16:16 | cross 31:1 32:12,22 | dealings 34:10 |
| condo 8:14 | conveniently 11:20 | counts 16:15 | 76:14 81:13 | 35:13 |
| conduct 39:1 41:1 | conversation 65:8 | County 1:3 7:15,15 | current 8:16 54:8 | dealt 11:12 66:13 |
| 41:5,22 62:7 | 66:12 74:23 75:6 | 7:17,20 8:4 101:3 | 54:9 | December 9:18 |
| confidential 12:17 | 75:11 77:9,11 | couple 11:8 29:12 | CV-2007-900018 | decide 25:5 60:15 |
| confirmed 18:19 | 87:19 98:17,19 | 30:9 31:21 32:9 | 1:8 | 60:16 |
| 19:21 | conversations | 73:20 75:3 92:2 | | decided 82:4 |
| conflict 45:14,15 | 54:21 64:20 65:1 | court 1:1,16 3:9 | **D** | decision 22:13 |
| | | | date 4:16 29:3,7,10 | |

JERRY M. BLEVINS v. CITY OF TUSKEGEE, ET AL.                    2/27/2008
DEPOSITION OF JERRY BLEVINS
Page 4

39:15 40:8,9,10
**decisions** 21:18
  22:11,15
**deemed** 40:3
**defamation** 46:9
**default** 24:8 37:5
  48:8,15
**Defendants** 1:10
  2:5,17 27:23
  28:12 33:17
  52:22 79:23
  88:22 89:9 98:12
**defenseless** 61:5
**defined** 16:22
**definite** 51:3,14
**defrauded** 90:4
**delivered** 10:5
**denial** 95:11
**denied** 95:19
**Denmark** 35:4
**depending** 92:17
**DEPONENT**
  100:10
**deposition** 1:14 3:4
  3:7,14,20,21 4:4
  17:7,8 18:10
  50:10 100:7
  101:8
**Describe** 54:17
**desired** 22:16
**determine** 22:10
**determined** 38:11
**differ** 20:14
**difference** 21:20
  56:11
**different** 26:2,11
  26:13 28:10 49:2
  62:23 92:7
**differentiate** 9:23
**differently** 27:13
  29:14 37:13
  83:18 86:6
**dirt** 10:1,2,5
**disclose** 98:22
**disclosed** 34:16
  53:1

**discovered** 85:1
**discriminate** 95:12
  97:4,12,13
**discriminated**
  85:11,12 95:14
  98:3
**discriminating**
  97:21
**discrimination**
  2:18 27:21 28:2
  33:6 84:23 85:17
  86:11,23 87:12
  95:10 97:1 98:8
**discuss** 36:14
**discussed** 63:11
  86:14
**discussion** 32:15
  33:8,11,16 64:4
  65:12 82:1 84:14
  84:18 88:1 96:11
**discussions** 65:19
  84:18
**dislike** 64:3
**dismissed** 59:11,14
**dismissing** 35:15
  58:21
**disparate** 85:23
  86:17
**displeasure** 61:23
**disposed** 12:15,19
**disposition** 12:18
**dispute** 34:2 80:12
  80:15
**disregard** 52:21
**distribute** 11:13
**district** 44:8
**divorce** 9:5
**divorced** 8:18
**doctorate** 9:11
**document** 17:7
  18:5 33:18,23
  80:18,22 82:12
  89:10
**documenting**
  72:21 96:11
**documents** 16:21

17:2,6,10,17,18
  17:23 18:2 28:10
  46:7 82:18 98:10
**doing** 7:11 23:9,14
  36:10 43:22 47:6
  58:21,23 59:2,5
  73:22 86:3
**dollars** 67:14
**donated** 66:21
**duly** 101:9
**duration** 91:21
**duties** 96:16,17

_____
        **E**
**earlier** 27:8 46:11
  51:23 52:23
  75:22 87:22
  88:21 92:1
**early** 9:7 29:3
**easier** 36:23 80:10
**easily** 72:2
**Eastside** 1:20
**eavesdrop** 98:18
**eavesdropping**
  77:13 98:16,21
**Ed** 7:3 26:22 27:3
  72:15 94:17
**educational** 9:9
**EEOC** 27:11,21
  28:3,11,15 33:20
  34:16 52:12,20
  53:1
**effect** 43:21,23
  88:5
**eight** 92:14
**either** 3:23 17:3
  32:20 68:16 73:7
  91:8
**Elementary** 6:18
**eligible** 31:20
**Elijah** 43:4
**embodied** 19:20
  20:14 89:6
**employed** 57:3
  94:14
**employee** 21:9,21
  22:2 52:21 94:5,6

94:17
**employees** 21:4
**employer** 19:5,6
**employment** 19:4
  19:8,12 29:18
  95:4 97:2
**engaged** 23:7
**Enrollment** 2:19
**ensure** 72:19
**entered** 19:18,22
  44:9 46:20
**entire** 11:21 34:8
  44:5 72:21
**entitled** 83:5,22
  84:16 95:9 96:23
**entity** 38:4 60:8
**error** 32:3
**espoused** 18:17
**et** 1:9
**ethical** 38:18
**ethically** 40:7
  62:12
**ethics** 39:2
**everybody** 21:21
  42:3,10,14 86:1
**everybody's** 35:10
**evidence** 3:15
  16:21
**evidences** 17:11,18
  17:20
**ex** 62:6
**exact** 64:1
**exactly** 29:22
  53:21
**examination** 2:13
  4:10 101:12
**examples** 59:20
**exceed** 91:20
**exception** 21:5
**excuse** 46:16
**executive** 69:6
**Exhibit** 2:16,17
  18:10,18,19,22
  19:20,21 20:10
  24:4,6 28:1,12
  33:5,18 38:9 39:5

40:16 52:22 63:6
  63:16 71:2 73:4
  79:14,23 81:6
  82:11 84:10 85:5
  88:23 89:9 98:12
**exhibits** 45:20
  68:14 89:18
**existed** 40:23
  85:23
**expect** 35:5 41:14
  61:18,19
**experience** 34:10
  50:5
**expired** 37:3
**Expires** 101:22,23
**explain** 71:8,13
**express** 42:1
**expressed** 88:11,16
**expression** 42:7,8
**ex-husband** 6:23
**eyes** 23:11
**e-mail** 69:19
**e-mails** 68:12

_____
        **F**
**fabricated** 82:16
**face** 42:8
**faces** 42:7
**fact** 36:4 44:23
  51:22 52:8 72:21
**factor** 27:19
**facts** 90:1,11 94:12
**fairly** 10:14
**false** 35:20,23 36:3
  55:2 58:7 69:12
**family** 4:20 31:5,7
**far** 17:14 21:11
  22:11
**father** 5:22 6:3
**fault** 37:11,12,16
  37:20 53:15 57:1
**favor** 41:15
**fax** 80:7
**faxed** 81:19,23
**February** 1:21
  80:1 81:1,7,12
  82:3,16,23 101:7

JERRY M. BLEVINS v. CITY OF TUSKEGEE, ET AL.                      2/27/2008
DEPOSITION OF JERRY BLEVINS

Page 5

fee 66:19 67:13
    68:20,22 69:3
fees 12:3
fellow 11:2
felonies 57:12
Fields 22:22
figure 44:11
file 14:1 67:9
filed 13:18 14:14
    16:1 19:15 21:17
    21:18 36:11
    52:17 67:8,19,22
    68:6,23 69:2,2
    72:12 89:12,22
    89:23 90:3 91:3
filing 3:20 13:20
    66:19 67:13 68:3
    68:20,22 69:3
fill 18:22 31:17
filled 29:8 31:3
finally 88:12
find 25:23 26:14
    31:19,23 32:6
    80:4
finding 44:14
fine 54:19
finished 9:13
fired 14:18,21
    56:13 61:14
    64:21 65:17
    97:19
first 4:7 8:22 28:23
    31:14 48:12 50:5
    65:3 69:11 74:10
    75:3 76:10 79:11
    84:22 85:10,16
    85:19 86:7,10
    101:9
fit 34:5
five 12:5,13 91:17
    91:20 92:22
fly 10:17
following 88:1
follows 4:9
Force 6:9 7:5,6
foregoing 101:10

forging 57:12
form 3:12
formal 62:8 85:22
formalities 3:6
formality 3:10
formed 18:8
former 6:9
forms 31:17
forth 21:5 75:16
Fortunately 98:22
found 26:5 29:14
    32:8 38:20 90:11
four 26:21 92:21
frame 69:14
fraud 15:5,6,10,13
    16:17 89:1,13
    90:6
fraudulent 17:3
Frazier 67:2
friendly 41:20,21
    74:1
frivolous 12:21,22
front 44:5
full 43:19
further 3:18 4:1
    28:17 35:6 58:3
    100:10 101:14
future 15:16

_____
G
Garrett 6:17
gee 9:6,23 10:8,14
    13:19
generally 22:14
    48:1 99:2
getting 30:9
GILLILAND 2:7
give 10:21 11:18
    59:19,23 60:7
    96:13
given 80:20
gives 13:6
giving 82:18 94:12
go 4:14 8:7,9 14:21
    29:6 35:7 36:5,7
    46:6 47:5 48:16
    49:4 57:6 58:13

59:6,19 60:9 62:5
    67:10 71:12 83:6
    91:22 93:2 97:6
goes 5:12
going 15:18 30:12
    32:20 33:9,17
    35:5,16 44:1,15
    45:7,17,19 48:10
    55:8 57:11 58:23
    60:5,9 63:22
    65:10 66:3,10
    75:23 77:20 78:4
    78:10 83:13,15
    83:21,22 87:3
    88:22 89:8 93:4
goings 87:2
good 13:23 51:4,8
    70:9 74:5 75:8
gotten 43:13
graduate 9:15
Graves 42:8,20,21
    44:14 56:8,16
    58:2 61:6,22
    63:19 64:7,16
    65:16 66:6 70:15
    75:9
Gray 1:18,19,19
great 56:10
ground 57:1
guess 9:8 13:6 14:2
    14:18 15:3 21:10
    27:5,23 32:6 37:6
    37:23 56:18 68:7
    77:13 79:8,10
    82:15 83:6 88:3
guidance 21:1
guy 10:1 43:4
    44:19
Gwen 99:12

_____
H
Hamilton 29:4
    72:20 93:12 94:9
handle 73:20
handled 86:6
handling 34:8
hanging 48:14

happen 72:19
happened 43:6,6
    58:2,4 60:13,18
    71:9 79:12 98:7
happy 75:18 76:5
hard 9:23
havoc 36:18
head 12:8 28:8
    56:23
health 27:14 28:19
    29:9 37:13 52:9
    84:16,20 95:11
    95:19 98:3
hear 55:23 56:16
    60:2 84:6 99:23
heard 51:20,21,22
    58:16 75:12,17
    78:21 83:7 84:3
    99:22
hearing 55:19
    58:19 61:12
    75:20
hearings 58:3
    67:16 68:5,9
Helen 5:10 6:10
help 39:13 43:14
    43:15 69:17
hereto 3:23 4:2
he'll 74:22
HIGGINS 2:7
highlighted 80:4
hire 16:4 19:7
hired 22:9 47:18
hires 20:2
historical 97:11
history 41:17
HITSON 2:7
holdover 24:9,11
    25:3
hole 56:23
HOLTSFORD 2:7
home 7:13
hour 92:23
hours 92:21,22
    98:4
house 10:3 11:2

housewife 5:3
Howard 2:6,15
    4:11 89:17 99:7
    100:6
Hughley 99:12
huh 35:10
hundred 5:15
    67:14

_____
I
idea 20:12 23:2
    50:5 67:21 71:23
    94:8 96:22
identify 89:9
ignorance 46:15
ignorant 46:17
illegal 20:20
imagine 47:23
immediate 58:9
immediately 31:4
    32:21 33:10 79:1
implement 72:9
impression 62:20
improperly 58:21
    59:5
inaccurate 17:3
inadequate 72:17
inappropriately
    39:12
incident 42:20
    54:18 61:7,12
    65:17 70:16
    75:10 76:11
included 22:3
including 35:19,20
incorrect 25:19
    78:7
increase 35:6
    51:21
INDEX 2:13,16
indicate 75:17
    80:17 98:11
indicated 30:8,12
    45:7 46:11 47:8
    88:8
indicates 20:6 24:4
    84:14 85:6 99:2

JERRY M. BLEVINS v. CITY OF TUSKEGEE, ET AL.                    2/27/2008
DEPOSITION OF JERRY BLEVINS
Page 6

indicating 32:12
indicative 76:4
inducement 15:6
informally 21:16
information 85:7
  98:23
initial 28:15 70:11
initially 36:22
injuries 43:10
injury 42:22
input 20:23 22:16
inquire 23:4 28:21
  29:7
inquired 30:3
  74:15 94:22
inquiries 28:18
  31:15 57:2
inquiring 56:15
Inquiry 13:3 38:15
  39:11,23 59:9
  60:12 64:21
  65:18 70:21
instances 22:14
  92:5
institute 36:8 72:4
insurance 27:14
  28:4,19,22 29:7,9
  29:14 30:6,9,16
  31:20 33:3,9
  34:17 35:8 37:14
  52:10,16,19 74:7
  74:15 75:13,18
  75:19 76:1,15,16
  76:19,22 77:15
  77:19 78:12
  79:10 83:3 84:11
  84:16,20 94:16
  94:20 95:11,18
  95:20,22 98:4,15
  99:20 100:1,3
intended 49:17
interaction 61:9,14
interest 47:16
  50:23
interested 95:1
  101:16

internal 46:4,6
  50:20
interview 22:17
  69:11 70:1 92:4
introduce 79:22
introduced 3:21
issue 27:14 34:9
  40:14 52:10,12
  78:23 83:3
issued 40:11
issues 63:4 89:5
  90:5

_____

J

January 98:14
Jasmine 8:17
Jeff 11:5
Jerry 1:6,14 2:3,3
  2:14 3:4 4:6,13
  101:8
job 10:6 14:12 22:8
  27:9 36:10 37:21
  37:22,23,23
  47:17 51:1 54:12
  58:18 93:6 96:5
Johnson 1:16 3:8
  101:4,20
joined 8:2
Jones 9:12,17
journal 57:21
judge 20:18 23:21
  24:6,8,20,23 25:3
  25:18 26:2,11
  35:15,20,21
  36:16 37:4,5
  38:14 39:12,21
  40:5,20 41:9
  45:10 51:17
  54:22 55:12 56:2
  57:11 58:16
  60:23 61:9,14,21
  62:15 65:3,6,16
  69:12 70:20 71:3
  71:4,7,10,14,20
  71:21 72:3 74:4,6
  75:7 83:7,21 84:4
  94:9 96:1,18,21

98:15 99:19
judges 24:13 62:5
judgeship 11:14
judgment 44:2,7
  97:18
judicial 13:3 38:15
  39:2,10,23 59:9
  60:12 64:21
  65:18 70:21
July 4:17 61:10,13
  62:15 65:15
juris 9:11
jurisdiction 40:13
  60:17
justice 38:1

_____

K

keep 39:18
Keith 26:22 27:6
  41:13 55:15,17
  70:18 73:14,17
  74:1 80:6 81:3
  82:5 88:6
kid 59:15
kids 5:4
kin 101:15
kind 7:11 21:18
  32:11 35:16
  36:18 62:13 72:8
knew 7:5 9:4 23:6
  23:13 36:12 42:3
  42:11 59:8
Knology 11:19
know 5:14 7:1,16
  7:19,22 10:20
  11:7,17 12:12,19
  13:12,13,16 14:2
  16:6,14 18:4
  19:14 21:20 22:5
  22:7,23 23:8,14
  25:21 26:19
  32:18 37:8 41:16
  42:13 43:5,21
  47:6,23 48:10
  49:18,19 50:3,8
  50:12,13,13,17
  50:18,20 51:17

51:22 52:7 53:21
  55:7,12 57:18,20
  60:14 61:6,19
  63:9,11,18 65:19
  65:22,23 67:20
  68:1 69:7 70:20
  71:11,14,20 72:1
  72:5,16,18,18
  73:10,12,19
  74:14,23 76:7,14
  77:14,16 78:5,10
  78:11,15,20
  79:11,18 80:13
  81:18 83:9 84:17
  86:11 87:3 89:4
  89:16,20 90:2,4
  90:10,12,17 91:1
  91:7 92:16 93:7
  94:7 96:20 99:19
knowing 44:18
knowledge 54:10
  70:23 73:14
known 41:16 61:23
  64:3 89:19
knows 35:15 71:10
  71:16

_____

L

lady 45:6 94:15
lambasting 43:20
Landscapes 11:5
landscaping 11:1
Langford 1:19
Large 1:18 3:10
  101:6,21
Lateefah 26:18
law 1:8,18 2:3,8
  9:6,12 14:4 20:6
  20:8,9,15,21 21:2
  25:11,21 26:5
  37:1 41:11 46:15
  46:17 48:1 49:22
  49:22,23 51:9
  91:10
lawsuit 9:20 14:22
  15:12 16:1 17:21
  19:15 50:13

52:16 90:11 91:3
  94:12
lawsuits 10:17
  11:15
lawyer 84:4
leading 33:11
learn 29:4
learned 30:14
  33:13 98:14
leave 22:9 92:13,16
left 11:20
legal 45:19 63:4
  90:14
legally 22:8
Leon 67:2
letter 16:20 18:7
  19:1 20:5 28:15
  33:4,12 40:12,18
  42:19 51:13,16
  53:20 54:3 61:11
  61:15 64:21
  65:17 66:1 70:6
  70:17 71:2,3
  72:20 79:5,9,11
  79:12,19 81:2,6
  81:11,23 82:6,7
  82:14 84:10,12
  84:13 85:3,6,15
  85:20 86:12 99:2
  99:5
letters 54:23 58:8
  69:23 79:4,6
  81:13,17 96:10
  96:13 99:3
let's 24:22 49:3
  60:2 79:22 83:19
  85:6 96:15
License 101:22
licensed 45:12
lies 73:11
lieu 34:13
life 41:11
limit 73:8
limited 86:21
limiting 87:4
line 38:22 42:14,15

JERRY M. BLEVINS v. CITY OF TUSKEGEE, ET AL.                2/27/2008
DEPOSITION OF JERRY BLEVINS

Page 7

42:16 45:6
lingering 48:7
listening 77:8
listing 2:19 52:22
literature 11:13
little 40:11 56:15
live 6:23 9:3
local 59:14 73:6
long 68:1 92:18
longer 73:8
look 28:8 51:13,15
  79:4,7 80:4 87:15
  89:15 99:8
looked 21:3 43:7
  63:10
looking 80:22
looks 27:4 61:11
lost 27:9,16
lot 12:22 13:19
  17:13 37:9 80:10
loudly 44:4
lying 36:3

**M**

M 1:6,16 2:3 3:8
  101:4,20
Macon 1:3 7:15,17
  8:4
mad 73:18
magically 98:10
magistrate 22:15
maiden 9:1
mail 32:12 81:13
  81:17 99:15
mailbox 99:16
mailed 81:20
making 16:18
  35:20 51:12
  85:21 87:1
Mallory 1:16 3:8
  101:4,20
manager 16:9,11
  20:13
mandamus 63:3
  63:15 66:16
  67:23 68:20
maneuver 35:9

manner 3:22
  101:16
manufactured
  82:11 83:2
March 33:4 34:1
  68:8 79:16,19
  80:14 81:14,15
  81:16,20,21 82:7
  82:8,10,13 84:11
  84:14 85:8,14
  86:12 87:8,14,21
  87:22 88:17
  101:18
mark 27:23 33:17
  88:22
marked 81:6 84:10
  89:8
married 4:21,23
  6:19,21
Martin 40:20 71:4
  71:7,10,14,21
  72:3
master's 9:13
matter 16:5 36:2
  40:21 63:20
  71:21 101:10
matters 62:21
Maxwell 6:8
mayor 22:21 29:22
  55:7 88:15
McGowan 1:19
mean 7:15 10:9,23
  11:7,22 12:17
  13:8,22 14:2 16:6
  17:12 22:5 27:4
  30:18 32:4 34:3
  35:14 41:11 43:7
  43:17 44:12
  48:15 51:20 58:9
  59:6 60:21 61:16
  61:17,19 62:5
  63:18 69:7 75:14
  76:12 77:5 80:22
  82:10,11 85:22
  86:4,14,19,21
  89:4 90:10 93:9

95:19 100:2
means 46:21,22
  47:4 54:15
meant 13:13 46:23
mediated 34:15
mediation 34:15
  53:1 77:18 78:6
  78:10
meet 69:5,10 92:4
  92:6
meeting 30:1 55:1
  69:14,20,21,22
  70:1,2,4 81:1,12
  82:3
meetings 63:10
  70:5 91:22
member 7:17,21
  8:1,4,12
members 54:22
  94:9
mention 82:2
  89:13
mentioned 12:7
  26:16 30:1 33:8
  74:13 87:7 90:22
mentioning 87:10
merit 50:16
mess 83:20
met 29:3 69:7,9
  92:1
Michael 1:14 2:14
  3:4 4:6,13 101:8
midst 10:16
miles 5:6,15,17
mill 15:19
mind 10:16 11:19
  28:7
mine 37:9
minute 11:18 64:5
  83:17
minutes 2:21 80:1
  80:5,23 82:15,19
  93:2
misconduct 86:2
misconstrued
  77:10

misled 80:21 85:1
misrepresentatio...
  37:17
mistake 34:22,23
  53:4,5
mistaken 79:21
mistakes 35:1,3
  53:5,7,8,17
modified 22:12
mom 6:10
monetary 90:1
money 11:3 35:22
  57:4,13 66:22
  67:3,4
monitor 73:2
monitored 72:13
Montgomery 2:4,9
  5:7,15,17 6:18
  7:20 8:13 9:11,12
  10:12 74:4 92:14
  93:2 101:3
month 30:3 70:6
months 29:12 30:9
  30:13 31:21 32:9
  55:10 75:3,22
  84:15
Moon 22:21
motions 67:22
motivated 28:16
moving 43:16
Muhammad 26:18
municipal 23:21
  24:20,23 25:17
  26:2 29:5 35:17
  36:19 37:10 38:5
  40:23 57:11
  62:22 72:6 73:9
  91:11 97:16
municipality 54:11

**N**

name 4:12 5:12 6:1
  6:12 7:2 8:11,22
  9:1 11:4 27:1
  49:14 59:23 60:1
  67:1
named 25:7,9,15

43:4 49:9,11 50:1
names 4:14 10:22
Nathanson 1:19
near 77:6 78:22,23
nearby 75:15
necessarily 24:18
  75:17
necessary 89:21
  91:20,21
need 3:13 79:10
needed 72:5,9
needs 34:6
neglect 17:11,13
neglectful 16:18,23
negligence 15:9
  16:14,16 17:5,11
  17:16,20 89:1,14
  90:9,12,23 91:5
negligent 16:13,22
  90:23
negligently 91:2
neither 19:18
  101:14
nerve 44:1
never 34:22 35:1
  46:14 58:16
  66:18 68:21
  69:21 92:7 94:22
  98:9
new 88:5
nine 92:15 93:7,10
NIX 2:7
normally 35:3
  92:13
notes 99:9
notice 2:18,23
  16:19 18:18,21
  27:21 28:2,23
  47:8 54:7 68:7
  83:1 87:12 89:20
  89:23 90:8,13
  98:12
notification 74:11
notified 36:13 55:4
  55:20 72:11 73:1
  79:20 80:16 98:2

JERRY M. BLEVINS v. CITY OF TUSKEGEE, ET AL.                    2/27/2008
DEPOSITION OF JERRY BLEVINS
Page 8

98:4,6
notify 36:8
number 4:18 10:20
    10:21,22 13:23
    14:3 73:8 101:22
nursing 7:13

**O**

objections 3:11,12
    73:21
obligated 38:3,6
obligation 38:18
observations 87:1
obviously 80:16
    89:4 96:19
occasion 41:19
Occasionally 8:8
occasions 69:8
    92:3,7
occupational 7:12
occurred 61:13
    65:19
October 72:23
offer 18:8,13,15,17
    19:3,5,12,16
offered 3:15 30:5
    99:20
offering 19:7
offhand 78:19
office 2:3 24:14
    25:8,15 29:6
    36:20 48:9 69:2
officer 21:7,10
officers 21:4
Offices 1:18
officials 87:4
oh 9:21 11:16
    12:12 13:19
    28:13 41:19
    45:21 55:14
    69:21 74:18,20
    75:2 77:12,14
    78:22 86:21
okay 6:1 7:17 15:4
    25:16 38:16 54:3
    56:19 63:8 65:13
    66:3 79:17,17,18

80:19 85:10 87:4
    88:6 90:13 99:19
once 8:21 45:8
    70:10 78:23
ones 12:6 68:13
ongoing 38:9
onslaught 70:11
open 40:6
operate 50:3
opinion 18:7 20:1
    35:12 40:15
    44:22 58:22 59:3
    59:4,7,10 60:13
opposed 72:6
opts 39:11
orally 85:21
ordinance 46:22
organization 30:17
    66:21 67:1
organizations 8:12
original 48:11 49:8
originally 32:4
ought 60:7,23
    97:10
outrageous 39:1
    97:13,16,17,18
outside 16:9 43:9
    94:2
overheard 98:20
    98:22
overhearing 76:21
overlooking 86:2
owed 10:5
owes 97:7

**P**

page 11:9 80:7,7
pages 101:11
paid 29:17 31:18
    68:21 76:7 91:18
paragraph 98:13
Parents 5:10
part 17:14,14
    19:13 45:1 51:5
    77:8 80:5
parte 62:6
parties 3:3,19 4:2

101:13,15
party 3:23
pass 81:17
passive 10:11
pathologist 6:17
pause 99:11
pay 30:2 35:7
    43:18 66:18 76:9
    96:20,21 97:10
payback 44:16
paying 31:9 34:18
    76:13
payment 29:20
pending 13:17
    15:12 66:17 67:5
    68:2
people 13:20,23
    31:14 34:5 35:15
    35:21 37:10 59:7
    86:15 87:3 95:12
    95:13 97:4,23
period 25:1 70:6
    82:8 83:10
permanent 54:7,14
permits 48:1
permitted 67:3
person 36:16 39:20
    54:16 67:2 71:16
    73:13 87:7 95:20
personal 16:4
    45:13
personality 58:5
personally 10:18
personnel 29:6
    94:15
petition 63:3 66:15
    67:8,22
phone 11:20 63:19
    65:5,23 88:1
photographs 43:10
physical 7:12
place 30:21 61:7
    69:15 75:1 78:21
plaintiff 1:7 2:2
    10:13
Plaintiff's 24:4

33:4 38:9 39:4
    40:16 63:5,16
    71:2 73:4 79:13
    81:6 84:10 85:5
plan 15:15
played 27:18
plea 44:10
plead 89:21
please 4:12 49:14
    51:5
pleased 75:19
pleasure 23:22
    24:17,19 25:1,4
    25:18 37:7,8
    46:19 48:21 49:6
    49:10,13,15
pleasured 49:20
point 34:4 35:9
    40:2 50:14 62:21
policy 21:11,14
    31:16
policy-making
    22:3,7
Poor 42:21
position 16:8,20
    18:18 20:7 21:11
    26:1,10,14,19
    27:11,16 29:21
    41:6 46:15 47:9
    47:10 50:15
    53:13,16 54:7,8
    90:5 91:1,18
    95:21,23
positive 81:5
possible 86:11
possibly 21:10
power 20:17
powers 20:12,14
Prattville 6:12
premised 18:1,3
premiums 31:10
prerogative 39:22
present 2:10 22:22
    71:12 93:17,23
presently 18:4
president 8:14

pretty 70:8 93:3
previous 24:10
previously 30:2
primary 17:16
print 80:10
prior 82:13
private 66:21
privately 32:23
probably 13:21
    44:20 45:11 46:2
    46:8 83:16
problem 54:20
    72:16
problems 70:10
procedural 3:6
procedure 3:17
    36:8 72:5,8,10,17
    72:22
procedures 29:4
process 23:2,4,7
professional 54:19
program 9:13
prohibited 62:12
prompted 58:7
promptly 69:4
property 47:16
    50:23
prosecute 21:15,16
prosecution 77:7
prosecutor 13:9
    18:20 19:7,11
    20:2,17 22:18
    23:16 26:2,6,11
    26:15,20 28:20
    29:15 31:12 34:9
    35:14 38:6 41:18
    43:12 46:13
    47:15,19 50:22
    51:1 58:12,19
    62:7 72:11,14
    73:16 80:6 87:13
    88:6,8 92:12
    93:22 97:3
prosecutors 25:20
    88:10,20
protect 62:1 97:14

JERRY M. BLEVINS v. CITY OF TUSKEGEE, ET AL.                    2/27/2008
DEPOSITION OF JERRY BLEVINS

Page 9

97:20
prove 48:18
provided 3:16,23
provision 23:18
prudence 9:11
public 98:20
publicly 44:20
pull 96:13
purpose 3:16
purposely 53:18
pursuant 1:15 3:5
pursue 38:17,20,21
    38:23 39:7 66:19
pursued 38:12
put 8:3 15:18
    73:19 85:13 90:7
    99:3,5
puzzled 86:5
p.m 100:8

**Q**

qualifies 22:10
quarter 92:15
question 23:9
    31:22 33:1 37:19
    41:4 42:18 57:17
    59:13,21 60:10
    60:11 63:12
    64:13 65:13
    88:19
questioned 41:21
questions 3:11,12
    27:8
quickly 74:18
quit 73:13
quite 43:11 73:23
quote 40:22

**R**

race 27:3 52:1,4,8
    84:22 95:13,15
    97:5,22
racial 85:17 95:10
    97:1
racially 28:16
rack 11:22
raised 67:3

rampage 63:23
ran 11:3
range 93:11
rate 30:5
rationally 66:11
Raymon 26:23
    27:3 72:15 94:17
read 24:6 60:16
    73:5 90:18
real 6:1 41:11
really 12:17 61:2
    90:4 96:22
realm 16:9
reason 19:10 23:8
    23:20 34:2,3
    44:12 47:22
    51:10 57:3 59:16
    71:11 85:12
    95:16,16
reasonable 54:16
    82:22
reasons 96:4
recall 10:9,23 12:7
    19:1 26:22 27:22
    50:11 58:10 67:1
    68:3 74:10 75:14
    75:20 76:12
    81:21 84:7 87:10
receipt 82:13
received 18:21
    32:11 40:19 68:7
    81:20 82:6,9,9
receiving 28:23
    74:10
recommendation
    21:2
record 83:20
referenced 76:16
references 81:11
referred 88:21
referring 17:6
    20:10 32:5
refers 81:7 91:5
reflects 57:10
regard 35:13
regarding 33:5

65:7,16 74:7
rejected 19:9
relates 50:21
relationship 54:17
relatives 5:6,13,16
    7:14
Relayed 66:9
relevant 20:23
relied 47:9
remained 24:8
remember 7:23 8:2
    8:11 20:18 29:2
    31:2 32:10 40:17
    43:8 68:5 69:1
    76:20,20 77:3
    87:18 89:16
    91:15 96:12
    99:14,17
remitted 69:3
removed 34:1
reopen 45:8
repeated 41:2
repeatedly 86:2
report 38:19
reported 101:7
Reporter 1:17 3:9
    101:5,20
REPORTER'S
    101:1
represent 33:19
representations
    16:19 17:1
represented 20:3
representing 3:3
    3:19
request 69:22
requested 69:20
requesting 72:23
required 90:8
requirements 3:7
requires 89:20
reserved 3:13
resolution 19:11
    19:13,14,16 24:3
    46:12,22
respect 3:6 26:13

27:14 32:1 37:13
respectful 54:20
responded 70:20
restitution 43:2,14
    43:19 44:11
restrict 11:12
result 17:4 24:8
    36:10 66:15
    90:11
results 38:8 101:17
resume 18:23 19:2
resurface 79:2
resurfaced 79:1
retaliation 28:17
    41:4 70:11
retired 6:5,9,9
Rick 2:6
rid 36:23 39:17,19
    47:21 48:3,4,5,6
    56:13,14 60:23
right 13:4 14:1
    23:19 24:2,15
    26:9 28:5,7 32:10
    34:20 37:15
    40:17 48:13
    51:11,12,19
    53:10 55:2 60:19
    60:21 63:7 64:8
    67:11,12 68:10
    71:5 77:23 78:8
    78:16,19 81:8,10
    82:6,20 83:3 85:3
    87:15 89:4 94:16
rise 94:12
Road 2:4,9
Rogers 9:2
role 31:12
rolls 34:18
room 13:6
Ross 5:11 7:3
rotten 35:4
rude 66:5
rudely 43:17
Rules 3:16
ruling 3:14
run 12:6

running 11:14
    70:13

**S**

SAITH 100:10
salesman 7:7
Sapp 1:19
sat 90:18
saw 46:14 59:7
    60:5
saying 18:13 20:20
    20:22 23:15,19
    23:21 70:6 71:6
    76:12
says 21:3 25:11,21
    26:6 33:9,23 40:5
    46:18 49:23,23
    50:1 51:7,9 53:23
    54:3,3,7 73:5
    91:10 98:14
Scapes 11:6
school 6:15 9:6,12
    14:5
science 9:14
screwing 11:9
    74:20
second 45:1 69:11
    75:6 76:11 79:12
    84:12
Security 4:18
see 10:8 13:6 15:19
    33:7 40:22 42:7
    42:19 46:11
    53:20 85:6 88:13
    89:15 90:6
seek 20:23 21:1
seen 33:18,22 35:1
    41:19 80:2 85:18
    91:10
send 18:23 70:21
    79:6
sense 14:1 54:13
sent 16:7 19:1 20:4
    28:2,11 33:3,12
    33:12,20,21
    46:14 47:1 54:23
    70:1 72:19 79:5

JERRY M. BLEVINS v. CITY OF TUSKEGEE, ET AL.                    2/27/2008
DEPOSITION OF JERRY BLEVINS
Page 10

79:19 81:2 83:1
  84:9,12 96:10
**September** 18:20
  47:7,15,19 54:2
**serious** 42:22
**seriously** 46:3
**serve** 18:19 22:1
  24:17,23 25:4,6
  44:1 45:10 47:18
  48:21 49:6 54:2
**served** 49:8
**serves** 23:21 24:18
  · 25:18
**service** 6:8 50:19
**serving** 13:9 34:9
  37:6,8 46:18
  50:22
**session** 69:6
**set** 21:5 26:12 45:9
  89:7 90:7 101:13
**sets** 89:23
**setting** 42:14 98:20
**severe** 43:11
**shady** 35:16
**shambles** 35:11
**Shield** 76:14
**shoot** 12:12
**short** 40:11
**shot** 93:3
**show** 51:5,6 71:7
  71:16 88:10,13
  89:8
**showed** 58:10
**showing** 67:7
**shown** 18:21 40:16
  66:6 87:23
**side** 77:6
**signature** 4:3
**significance** 97:12
**similar** 95:21,23
  96:17,21
**simple** 49:12
**simply** 53:7 60:3
**sister** 5:10 6:14
**sit** 58:13
**site** 10:6

**sitting** 90:20
**situation** 42:2 92:3
  93:13
**skimmed** 90:17
**small** 12:3
**smoking** 10:12
**smooth** 70:9,15
**smoothly** 70:13
**social** 4:18 8:12
  14:8
**socialize** 94:2
**soliciting** 8:1
**somebody** 7:23
  10:10,19 42:13
  44:21 46:17,23
  47:2 52:5 53:14
  54:13 58:16 70:7
  74:20 75:13 77:5
  86:10 87:17
  97:20 100:3
**somebody's** 80:20
  98:18
**soon** 24:12 49:13
  49:20
**sorry** 71:6 93:15
**sort** 44:16
**spats** 73:17
**speak** 4:8 94:19
  101:9
**speaking** 44:3 77:2
  99:17
**speaks** 91:7
**specific** 17:12
  25:22
**specifically** 15:1
  76:18,20 90:6,23
**specificity** 89:22
**speculate** 97:23
**speculation** 34:14
**speech** 6:17
**spend** 93:6
**spoke** 43:17 63:18
  71:21 76:10
  81:22 94:15
**spoken** 33:7 94:11
  94:18

**spontaneously**
  43:22
**stand** 58:23
**standing** 75:15
  84:5
**started** 55:2
**starts** 43:20
**state** 1:17 3:9 4:12
  11:10 14:6,7,11
  101:2,5,21
**statement** 25:19
  40:15 78:9,20
**statements** 47:9,11
  47:11 76:22
**statute** 3:23 20:23
  21:6
**stays** 24:14 25:8,14
**steal** 44:19
**stealing** 35:22
  57:13
**steals** 39:18
**stick** 56:23
**stipulated** 3:2,18
  4:1
**stipulation** 1:15
  3:5
**STIPULATIONS**
  3:1
**stole** 44:23
**stolen** 57:4
**stood** 45:5 72:2
**stop** 24:1
**straight** 86:7
**straighten** 74:22
**strange** 75:21
**Street** 1:20
**stretch** 44:17
**strict** 21:15
**strike** 21:20
**studying** 90:21
**stuff** 12:17 17:13
  39:19 99:13
**submitted** 16:10
  46:7
**subsided** 70:12,16
**substantial** 82:8

**substantially**
  95:21
**successful** 63:22
**successor** 24:15
  25:7,8,15 49:9,11
  49:14 50:1
**sue** 11:1
**sued** 9:19,19,22
  10:1,7,10,11,12
  10:18 11:7,9,19
  45:16 46:9 50:9
**sufficient** 90:7
**suggested** 63:20
**suing** 10:1 11:1
  15:22 16:2
**Suite** 2:4,8
**suppose** 61:16
**supposed** 25:13
  40:22 47:4 80:17
  80:23 81:11
  82:19 88:7,9,13
**supposedly** 35:2
**Supreme** 67:9
**sure** 7:11 10:8 12:1
  33:20 46:23 48:4
  50:17 56:9 57:8
  60:2,6 71:17 77:4
  84:21 89:17
**surprise** 72:1
**surprised** 27:18
**suspect** 34:4,11
  35:5 44:20 66:2
  73:11 83:2
**suspected** 44:12
**sustained** 42:22
**sworn** 4:7 101:9
**system** 38:2,2,7
  50:16,19

---

**T**

**table** 77:7
**take** 25:12,13
  29:17 39:11
  45:19 51:15
  53:14 54:6 73:8
  89:19 92:11,23
  93:1,5 96:15

**taken** 1:15 3:4,8
  67:18
**talk** 24:22 33:2
  42:5,6 55:5 61:21
  62:3,9,14 63:13
  64:12,14,18
  65:11 66:3 71:7
  74:6 83:19 93:1
  99:12
**talked** 40:20 55:12
  79:10 93:12
**talking** 17:15
  32:16 37:15,18
  53:21 61:12 63:5
  63:15 64:17
  69:22 75:12,16
  76:11,15 77:6
  82:17 83:7 84:4
  95:18 98:19
  99:14
**talks** 69:19 71:2
**taxes** 29:18
**teacher** 6:15
**tell** 7:19 8:5,6
  10:23 13:15 22:6
  28:9 55:17 58:14
  58:15,16 60:4
  63:1 65:21 70:3
  85:17 90:1,20
  97:8 98:1
**telling** 20:5 42:10
  55:18 70:17
  74:19 81:3
**tells** 47:11 54:14
  58:13
**tend** 58:12
**Tennessee** 9:4
**term** 24:10 25:14
  25:22 26:6,12
  29:20 36:20 37:1
  37:2,3 48:9,11,18
  48:20 49:8 54:8
**terminate** 48:2
  51:3 52:19 56:20
  82:4 83:13
**terminated** 32:21

JERRY M. BLEVINS v. CITY OF TUSKEGEE, ET AL.                    2/27/2008
DEPOSITION OF JERRY BLEVINS

33:10,14 52:8,10
52:15 53:11 68:2
75:23 77:21 78:4
79:1,20 82:2,13
82:23 87:14,20
88:2,17 98:5,6
**termination** 28:16
52:1 68:7 70:10
78:23 97:2 98:7
**terms** 19:20 74:5
**testified** 4:9 20:16
46:5 51:23 92:1
**testimony** 15:18
70:14
**thank** 66:7
**theory** 90:14
**therapy** 6:11 7:12
**thereof** 101:17
**thing** 39:15 58:9
90:17 91:7 97:17
99:14
**things** 33:21 34:5
35:16 38:22 49:2
58:22 59:5 60:5
62:13 73:22 86:5
89:5,21 97:23
99:3
**think** 5:11 6:12
7:12,22 8:6 11:16
11:23 14:21
16:12 17:12
18:15 23:8 26:5,7
27:2,13,16 28:3
29:20 31:9,22
36:5 38:23 40:2
40:17 42:23 44:3
47:13,16,18 48:3
48:5 49:4 50:23
55:3 56:1 67:14
70:8 71:10 72:8
74:15 75:15 77:8
78:19 79:9 80:19
80:20,21 81:5
82:11,21 87:21
88:23 90:7 91:7
93:20 95:3,4,9,14

95:23 97:7,9,10
97:12,16,19 99:7
**thinking** 26:3
42:12 44:1 75:21
86:9 93:21
**thinks** 39:14 42:15
**third** 84:17
**Thomas** 26:22
27:6 41:14 55:15
55:17 70:18
73:14,17 80:6
81:3 82:5 88:6
**thought** 23:13
26:21,23 27:9
30:8,11,13 43:21
51:23 78:7 98:2
**three** 26:22 70:5
84:21 89:7 93:9
98:7
**thrown** 12:21
13:22
**Thursday** 1:21
61:17 74:12
92:20 93:3 101:7
**time** 3:13,14 9:14
13:21 15:16 23:3
23:8 30:21 37:2
41:21 46:2 58:10
67:6 68:5 69:8,11
69:11,14 74:8,10
82:8 83:10 84:8
85:16,19 86:7,10
90:3,5 92:11 93:1
93:5,5
**times** 8:20 9:22
10:1,18 11:8 33:2
68:3
**today** 21:3
**today's** 15:18
**told** 29:9,11,22
30:2,21 31:11
32:4,14,17,19
33:15 43:14 47:7
47:13,20 54:4
55:21 58:18
62:22 63:22 64:9

64:15,15,17 65:3
65:4,10 66:9,10
73:7 75:22 76:9
76:23 77:20 78:3
82:1 83:5,11,12
83:23 86:8 87:20
88:2,4 96:5 98:9
**tone** 66:5,6
**Tony** 5:12 7:8
**top** 1:2 28:8 81:8
**totally** 45:6 52:21
**Trace** 8:17
**Tracy** 5:11,11 6:14
**transcription**
101:12
**travel** 93:1,5
**treated** 27:13
37:13 41:22
**treating** 83:17
**treatment** 28:3
85:23 86:17
**trial** 3:22
**triggered** 52:18
53:17
**true** 25:3 47:12,14
59:9,11,13,17,22
60:12 101:11
**truth** 4:8,8,9 7:19
8:5 90:2 97:9
101:9
**try** 52:7 63:21 79:4
82:12
**trying** 11:12,22
43:13 48:17 60:3
62:1 65:21 68:22
85:13 97:14,20
**turmoil** 36:14,15
37:15,18,19,21
38:1 40:23 46:4,6
56:13,14
**turning** 72:6
**Tuskegee** 1:9,20
2:20 7:14 14:23
15:8,23 20:13
22:2 26:16 35:2
35:11 39:14,21

45:16 50:15,21
57:7 73:9 86:11
86:20 87:2,5
89:12 94:6,11,13
97:11
**two** 16:21 17:16,23
36:21 48:11,15
49:2 67:14 69:8
84:21 86:6 88:10
88:20 92:5,8,10
92:16
**two-year** 49:8
**type** 6:11 12:3
15:10 39:20
40:15 71:16
**typed** 87:17
**typically** 100:2

**U**

**uncertain** 88:9
**uncertainty** 88:11
88:16
**underhanded**
34:12,21 35:9
**understand** 48:10
54:15 57:19
65:14 79:9 95:5,7
**understanding**
20:22 25:10
41:13 52:11,15
55:18 66:17
100:5
**understood** 95:8
**undeservedly** 44:6
**unequal** 28:3
**unethical** 41:1,5,22
45:7
**unethically** 37:22
38:3
**unhappy** 55:7
**University** 9:10
**unrelated** 44:15
**unsigned** 80:9,22
82:17
**unskillful** 16:18,23
**untrue** 53:23 54:4
99:3

**upset** 73:15

**V**

**varied** 92:13,17
**verbally** 40:6
**victim** 38:5 40:5,6
41:23 42:21 61:5
**victims** 35:19 61:1
**violated** 39:1
**violative** 40:4
**violent** 42:22
**vote** 23:1 24:5,7,12
25:5,12
**vs** 1:8

**W**

**wait** 24:1 64:5 65:1
83:16
**Waites** 11:5,5,6
**waived** 3:7,20 4:4
**walked** 58:11
**want** 10:20 11:17
11:22 22:5 39:18
48:11 59:19,23
60:4 64:18 83:20
87:16
**wanted** 41:13 55:5
66:12 78:14
**wants** 39:21
**warranted** 15:20
**wasn't** 19:5 36:11
37:9,21 38:11
41:15 57:17
58:23 64:12
65:10 66:10
71:12 72:7 73:15
75:2 87:21 94:23
98:21 100:4
**watched** 45:5
**way** 41:22 49:16
52:9 62:8,8,15
66:18 68:16
71:22
**week** 92:11,19,21
92:22
**welcome** 73:5
**went** 14:4 20:9

JERRY M. BLEVINS v. CITY OF TUSKEGEE, ET AL.                                    2/27/2008
DEPOSITION OF JERRY BLEVINS
Page 12

| | | | | |
|---|---|---|---|---|
| 31:11,14 32:22 | 47:3 48:18,19 | $2,500,000 95:10 | 2nd 87:14,21 88:17 | **6** |
| 43:17 55:5,10 | 60:22 73:22 | 96:23 | 2-to-2 24:7 | 6 33:5 79:14 84:10 |
| 61:16 | 81:14 | $7,519,000 97:7 | 2/24/09 101:23 | 85:5 |
| weren't 47:12 98:6 | wrongdoings | | 2/27/07 2:20 | |
| Wetumpka 8:10 | 98:23 | **#** | 200-3 2:4 | **7** |
| 8:17 | wrote 61:10 | #1 28:1,12 | 2006 34:1 61:10,13 | 7th 80:1 |
| we'll 66:7 | | #2 33:18 52:22 | 62:15 65:15 68:6 | 79 2:20 |
| we're 17:6,15 | **Y** | #3 79:23 | 93:19 | |
| 37:15,18 43:19 | yah-yahing 56:4,5 | #4 88:23 | 2007 33:4 68:8 | **8** |
| 60:9 63:5 83:15 | yeah 9:8,21 10:9 | #5 89:9 98:12 | 80:1 81:7,15 82:7 | 8 38:9 40:16 |
| 96:5 99:7,9 | 11:7,16,19 12:10 | | 84:11 85:15 | 88 2:22 |
| we've 21:3 49:4 | 12:14,14,21 13:5 | **0** | 86:12 87:8,14 | 89,98 2:23 |
| 88:23 | 14:6 15:6 22:2 | 06 73:1 93:21 | 98:14 | |
| white 27:4,4,5,10 | 24:11,14 27:7 | 07 79:16,19 81:1 | 2008 1:21 18:20 | **9** |
| 27:15,17 52:6 | 28:13,13,14 | 08 54:2 | 47:8,15,19 101:7 | 9 39:5 |
| 85:11 95:20 | 30:20 31:11 | 09/30/08 101:22 | 101:18 | 90 9:16 |
| wife 5:16 86:19,22 | 38:21 42:21 | | 233 67:15 | 90s 9:7 |
| wife's 8:22 | 45:21 49:4,22 | **1** | 24 98:4 | 91 9:8 |
| wish 50:6 66:8 | 50:11 51:2 52:23 | 1 2:18 79:16,19 | 25th 101:18 | 92 9:8 |
| witness 4:2,3,7 | 53:12 55:14 | 1st 33:4 34:1 68:8 | 27 1:21 81:1 82:3 | 93 9:18 14:12 |
| 42:15 101:12 | 59:16,17 60:20 | 80:14 81:14,15 | 101:7 | |
| witnesses 55:15,16 | 60:23 61:1 63:18 | 81:16,20,21 82:7 | 27th 81:7,12 82:16 | |
| 55:20,21,22 | 64:6 69:1 78:22 | 82:9,10,13 84:11 | 82:23 | |
| wondered 85:23 | 79:18 80:21 | 84:14 85:8,14 | 28 2:18 | |
| Woods 43:4,18 | 81:11 82:10,21 | 86:12 87:8,22 | 2800 2:4 | |
| word 51:15 54:6 | 83:1 84:2,2,2 | 1:54 100:8 | 285 8:17 | |
| 85:16 90:18,18 | 85:14 87:9,9,17 | 10 73:4 80:7 | | |
| words 64:1 76:3 | 88:3 89:11 91:13 | 10:30 93:8 | **3** | |
| 91:18 | 94:1,15,17 95:19 | 100 5:6,17 101:11 | 3 2:20 17:7 18:18 | |
| work 5:19,21 6:4,7 | year 9:15 11:21 | 1007 81:8,16 | 18:22 19:21 | |
| 7:4 14:4 19:6 | 14:10 81:8 83:8,9 | 108 1:20 | 30th 18:20 | |
| 23:5,6 63:21 94:3 | 91:17 93:18 99:6 | 11 71:2 | 300 2:8 | |
| worked 6:8 11:2 | years 10:9 11:8 | 11:55 1:22 | 33,52 2:19 | |
| 14:5,6,10 23:2 | 12:4,5,13 13:19 | 12 63:6,16 92:16 | 36106 2:4,9 | |
| worker 14:8 | 36:21 48:12,15 | 12:30 93:11 | | |
| workings 50:21 | 71:15 74:4 91:17 | 13 24:4 61:10 | **4** | |
| works 6:11 7:9 | 91:21 | 13th 61:13 62:15 | 4 2:15,22 17:7 | |
| wouldn't 26:1 | Yellow 11:9 | 65:15 | 18:10,19 19:20 | |
| 27:18 70:8 71:23 | yesterday 7:21 | 14 12:4 13:19,21 | 98:14 101:11 | |
| 100:2 | youths 14:9 | 71:15 | 4th 72:23 | |
| writ 63:14 66:15 | y'all 63:21 | 16 14:20 | 4001 2:9 | |
| 67:8,23 | | 17th 4:17 | 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 4:19 | |
| written 40:10,15 | **Z** | 18 5:4 | 443 101:22 | |
| 85:20 | Zelda 2:4 | 1966 4:17 | 45 93:1 | |
| wrong 23:11,17 | | | | |
| 25:2 40:7 42:2,4 | **$** | **2** | **5** | |
| | $1,000 30:2 | 2 2:19 20:10 | 5 2:23 81:6 82:11 | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### EASTERN DIVISION

|  |  |
|---|---|
| JERRY M. BLEVINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) Civil Action No.: 3:09-cv-137 |
| vs. | ) |
| | ) |
| CITY OF TUSKEGEE, ALABAMA, | ) DEMAND FOR JURY TRIAL |
| a Municipal Corporation; ALFRED | ) |
| J. DAVIS, in his individual and | ) |
| official capacities; JOHNNY FORD, in his | ) |
| individual capacity; OMAR NEAL, in his | ) |
| official capacity as Mayor of the City of | ) |
| Tuskegee; MAE DORIS WILLIAMS, in her | ) |
| individual and official capacities; & | ) |
| WILLIE LOUISE FIELDS, in her | ) |
| individual and official capacities, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

1.      Plaintiff Jerry M. Blevins ("Blevins") is a white male over the age of nineteen

(19) years and a permanent resident of the County of Montgomery, within the Middle

District of Alabama. At all times mentioned herein, Blevins was a duly licensed attorney

engaged in the private practice of law as a solo practitioner in the State of Alabama, with his

business office located in Montgomery County, Alabama.

2.      Defendant City of Tuskegee, Alabama, is a body corporate, a municipality,

formed and existing under the laws of the State of Alabama located in Macon County,

within the Eastern Division of the Middle District of Alabama. During all times mentioned

herein, the governing body of the City of Tuskegee was a council-manager form of

government, pursuant to § 11-43A-1, et seq., Code of Alabama (1975), with a five (5) member council consisting of: Mayor Johnny Ford, Councilwoman At Large Mae Doris Williams, Councilman Lutalo K. Aryce, Councilwoman Willie Louise Fields, and Councilwoman Georgette White-Moon. Said Defendant is an employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended, and the Civil Rights Act of 1991.

3.    Defendant Alfred J. Davis (hereinafter referred to as "Davis") is a black male over the age of 19 years and, on information and belief, is a permanent resident of Macon County, Alabama. At all times mentioned herein, Davis was employed by Defendant City of Tuskegee as its City Manager and was acting within the line and scope of his employment/agency during all times complained of.    Blevins brings this action against Davis in both his individual and official capacities.

4.    Defendant Johnny Ford (hereinafter referred to as "Ford") is a black male over the age of nineteen (19) years and, on information and belief, is a permanent resident of Macon County, Alabama. At all times mentioned herein, Ford served as the mayor of the City of Tuskegee and was acting within the line and scope of his duties as Mayor during all times complained of. Ford is no longer mayor and Blevins brings this action against Ford in his individual capacity.

5.    Defendant Mae Doris Williams (hereinafter referred to as 'Williams") is a black female over the age of nineteen (19) years and, on information and belief, is a permanent resident of Macon County, Alabama. At all times mentioned herein, Williams served as a councilwoman for the City of Tuskegee and was acting within the line and scope

-2-

of her representative capacity as a councilwoman during all times complained of. Blevins

brings this action against Williams in both her individual and official capacities.

6.    Defendant Willie Louise Fields (hereinafter referred to as 'Fields") is a black

female over the age of nineteen (19) years and, on information and belief, is a permanent

resident of Macon County, Alabama. At all times mentioned herein, Fields served as a

councilwoman for the City of Tuskegee, Alabama and was acting within the line and scope

of her representative capacity as a councilwoman during all times complained of. Blevins

brings this action against Fields in both her individual and official capacities.

7.    Defendant Omar Neal is a black male over the age of nineteen (19) years and

is the present mayor of the City of Tuskegee. He is sued only in his official capacity as

mayor.

8.    This suit is authorized and instituted pursuant to Title VII of the Civil Rights

Act of 1964, as amended, 42 U.S.C. §2000e et seq.; and the Civil Rights Act of 1991, 42

U.S.C. §1981a. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331; 28

U.S.C. §1343(a)(4); 28 U.S.C. §2201; 28 U.S.C. §2202; and the supplemental jurisdiction

of this Court. The violations of the rights of the Plaintiff alleged herein occurred within

the Eastern Division of the Middle District of Alabama.

9.    Plaintiff has fulfilled all conditions precedent to the institution of this suit

under Title VII in that Plaintiff timely filed a Charge of Discrimination against Defendant

City of Tuskegee, Alabama with the Equal Employment Opportunity Commission and filed

this Complaint within ninety (90) days of the receipt of his Right-to-Sue Notice from the

Civil Rights Division of the U.S. Department of Justice.

10.    On or about May 25, 2005, Blevins learned that Defendant City of Tuskegee was accepting applications for municipal judge and municipal prosecutor, via a notice distributed by Defendant Davis.

11.    In response to the notice, Blevins submitted his application and resume to Defendant Davis for the position of city prosecutor.

12.    Blevins was interviewed by Defendant City of Tuskegee's five member City Council, along with Defendant Davis, in or around September 2005. During this meeting, the rate of pay for the city prosecutor position was discussed and agreed upon should Blevins be appointed city prosecutor.

13.    On or about November 3, 2005, Blevins was notified by letter by Defendant Davis of his appointment as city prosecutor.

14.    Blevins was appointed city prosecutor based on the majority vote of the governing body, consisting of yea votes of Councilpersons Aryee, Fields, and White-Moon, and nay votes of Mayor Ford and Councilwoman Williams.

15.    Blevins accepted the appointment and assumed the position of city prosecutor immediately thereafter.

16.    At the time of Blevins' appointment, Albert C. Bulls, III (hereinafter referred to as "Bulls"), a black male, was the Municipal Judge for the City of Tuskegee, a position he continued to serve in by default pursuant to §12-14-30(b), Code of Alabama (1975), subsequent to Blevins' appointment, due to the governing body's failure to appoint a

-4-

successor municipal judge.

17.   On or about July 13. 2006, Bulls engaged in what Blevins deemed to be unethical conduct in undeservingly verbally attacking a victim of a vicious assault, Carmellia Graves (hereinafter referred to as the "Graves matter"), during a restitution hearing in Municipal Court.

18.   Prior to the Graves matter, Blevins and Bulls had been on good terms with one another.

19.   As a result of Bulls' unethical conduct, Blevins filed a Complaint with the Judicial Inquiry Commission ("JIC") and further filed a Petition for Writ of Mandamus and Emergency Stay with the Circuit Court in Macon County, concerning certain rulings made by Bulls during the hearing on the Graves matter. Copies of each of these documents were provided to Defendants.

20.   In retaliation for the filing of the JIC complaint and the mandamus petition, Bulls instituted an orchestrated campaign of making false and /or misleading accusations to the governing body of the City of Tuskegee against Blevins, in addition to attempting to provoke Blevins into confrontations in the Municipal Court.

21.   As a result of the aforementioned retaliation, Blevins filed a supplemental complaint with the JIC documenting the retaliatory measures taken by Bulls subsequent to the filing of the original JIC complaint. A copy of this complaint was provided to Defendants.

22.   Neither the governing body of the City of Tuskegee, nor Defendant Davis,

-5-

took any action to address Bulls' misconduct or to protect Blevins from Bulls' continued acts of retaliation.

23.   On or about March 2, 2007, Defendant Davis notified Blevins of his termination as City Prosecutor, effective immediately.

24.   Blevins' termination resulted from a majority vote of the governing body, consisting of yea votes of Mayor Ford and Councilpersons Fields and Williams and nay votes by Councilpersons Aryee and White-Moon.

25.   Prior to being terminated, Blevins was not afforded a "due process" hearing or a meeting with Defendants to address any matters upon which the termination was based.

26.   Prior to the filing of this action, Blevins filed an itemized and verified claim with Defendant City of Tuskegee as required by Alabama law. Said claim has not been acted on as of the filing of this action.

## COUNT I

27.   Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 26 of this Complaint as fully as if set forth herein.

28.   During the course of Plaintiff's employment, Plaintiff was subjected to disparate terms and conditions of his employment by Defendant City of Tuskegee, Alabama, because of his race, white, in that Plaintiff was denied family health insurance coverage as a benefit of employment but Bulls, a black employee in the same job classification, was provided such coverage.   Said action constitutes a violation of Title VII of the Civil Rights Act of 1964, as amended and the Civil Rights Act of 1991.

29.   As a consequence of said unlawful conduct, Plaintiff suffered a loss of benefits, embarrassment, humiliation, and physical and mental distress.

## COUNT II

30.   Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 29 of this Complaint as fully as if set forth herein.

31.   During the course of Plaintiff's employment Plaintiff repeatedly inquired about and complained about the denial of his insurance coverage while Bulls was provided such coverage. On March 1, 2007 Plaintiff notified Defendant Davis that it appeared the denial was racially motivated, and that Plaintiff had contacted the EEOC concerning the matter. On March 2, 2007 Plaintiff was notified of his termination as City Prosecutor, effective immediately.

32.   Plaintiff avers that his termination was in retaliation for his inquiries, complaints, and contacting the EEOC with regard to his concerns of racial discrimination.

33.   As a consequence of said unlawful conduct, Plaintiff suffered loss of wages and fringe benefits, embarrassment, humiliation, physical and mental distress, and physical and mental and emotional pain and anguish.

34.   The retaliation against Plaintiff was unlawful under Title VII of the Civil Rights Acts of 1964, as amended and the Civil Rights Act of 1991.

## COUNT III

35.   Blevins expressly adopts as if set forth fully herein the allegations of paragraphs 1-34 above.

36.     Defendant Davis represented to Blevins in the notice referenced at ¶10 above, that Defendant was ". . . accepting applications and resumes for **permanent appointment** to the positions of... Tuskegee Municipal Court Prosecutor... **for the term of the current administration**."

37.     Defendant Davis represented to Blevins in the notice of appointment referenced at ¶13 above, that he had been appointed City Prosecutor "... effective immediately **for the remaining tenure of this council which ends September 30, 2008**."

38.     The representations of Defendant Davis were false and were made intentionally with knowledge of their falsity, recklessly without knowledge, or innocently and by mistake. In fact, at the time of Defendant Davis' representations, it was his understanding that the city prosecutor would serve at the pleasure of the governing body for the City of Tuskegee and may be terminated at any time, with or without cause.

39.     Said representations of Defendant Davis were misrepresentations of material facts which were relied upon by Blevins in accepting the appointment as city prosecutor.

40.     As a direct and proximate cause of said misrepresentations, Blevins has suffered lost income and mental anguish.

## COUNT IV

41.     Blevins expressly adopts as if set forth fully herein the allegations of paragraphs 1-40 above.

42.     Blevins entered into a contractual agreement with Defendant  City of Tuskegee, by and through Defendant Davis, to serve as city prosecutor through September

-8-

30, 2008.

43.    Defendants breached the contractual agreement in terminating Blevins as City Prosecutor on March 2, 2007, without just cause.

44. As a direct and proximate result of Defendants' actions, Blevins has suffered injury/damages.

## COUNT V

45.    Blevins expressly adopts as if set forth fully herein the allegations of paragraphs 1-44 above.

46.    Defendant Davis had a duty to ensure the accuracy of his representations to Blevins concerning the terms of the position of City Prosecutor.

47.    Defendant Davis breached this duty of care in misstating the term of the position of City Prosecutor.

48.    Said misstatements resulted from neglect, carelessness or unskillfulness on Defendant Davis' part.

49.    Defendant City of Tuskegee is liable for Defendant Davis' actions pursuant to § 11-47-190, Code of Alabama (1975).

50.    As a direct and proximate result of Defendant Davis' negligence, Plaintiff has been injured/damaged.

## COUNT VI

51.    Blevins expressly adopts as if set forth fully herein the allegations of paragraphs 1-50 above.

52.    Section 11-43A-45, <u>Code of Alabama</u> (1975), reads as follows:

> No person shall be appointed to or removed from, or in any way favored or discriminated against with respect to any municipal position or appointive municipal administrative office because of race, sex, political or religious opinions or affiliations.

53.    Blevins alleges that his removal as City Prosecutor resulted from race discrimination by Defendants.

54.    Instead of addressing Bulls' continued acts of retaliation and misconduct, both on and off the bench, and in conducting no substantive inquiry into Bulls' misconduct, Blevins contends that Defendants simply ignored Bulls' misconduct and favored Bulls over Blevins, in terminating Blevins as city prosecutor, because Blevins is white.

55.    As a result of Defendants' actions, Blevins has suffered extreme mental anguish and other injuries/damages.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court will grant him relief as follows:

A.    Grant Plaintiff a declaratory judgment that the policies and practices and conduct complained of herein are unlawful and violative of the rights of the Plaintiff as secured by Title VII of the Civil Rights Act of 1964; and the Civil Rights Act of 1991;

B.    Grant Plaintiff a permanent injunction enjoining Defendants, its agents, successors, employees, attorneys, and those acting in concert with the Defendants and at the Defendants' request, from continuing to violate Title VII of the Civil Rights Act of 1964; and the Civil Rights Act 1991;

C.     Compensatory and punitive damages;

D.     Grant Plaintiff reinstatement to Plaintiff's employment or front pay in lieu

thereof;

E.     Grant Plaintiff an award of lost wages, back pay and fringe benefits (plus

interest);

F.     Plaintiff further prays for such other relief and benefits as the cause of justice

may require, including all equitable relief within the jurisdiction of the Court, and an award

of costs, attorneys' fees and expenses.

_Gerald L. Miller_

Gerald L. Miller (MIL039)
Attorney for Plaintiff, Jerry M. Blevins

**OF COUNSEL:**
REDDEN, MILLS & CLARK, LLP
940 Financial Center
505 North 20th Street
Birmingham, Alabama 35203
(205) 322-0457
glm@rmclaw.com

s/Jerry M. Blevins
Jerry M. Blevins (BLE003)
Hillwood Office Center
2800 Zelda Road, Suite 200-3
Montgomery, Alabama 36106
(334)262-7600

-11-

## JURY DEMAND

Plaintiff hereby demands a trial by struck jury in this cause.

*Gerald L. Miller*
Of Counsel

## DEFENDANTS' ADDRESSES:

City of Tuskegee, Alabama
c/o Omar Neal, Mayor
101 Fonville Street
Tuskegee, Alabama 36083

Omar Neal, Mayor
101 Fonville Street
Tuskegee, Alabama 36083

Johnny Ford
108 Eastside St
Tuskegee, AL 36083-1701

Alfred J. Davis
101 Fonville Street
Tuskegee, Alabama 36083

Mae Doris Williams
101 Fonville Street
Tuskegee, Alabama 36083

Willie Louise Fields
101 Fonville Street
Tuskegee, Alabama 36083