IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| JERRY M. BLEVINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CASE NO. 3:09-CV-137-WKW [WO] |
| v. | ) | |
| | ) | |
| CITY OF TUSKEGEE, ALABAMA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jerry M. Blevins brings this action against the City of Tuskegee, Alabama, Alfred J. Davis, Johnny Ford, May Doris Williams, Willie Louise Fields, and Omar Neal (collectively, "Defendants"), alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and various state-law claims. (Doc. # 1.) Specifically, Mr. Blevins – who is white – claims he was denied health insurance during his tenure as Tuskegee County Municipal Prosecutor on the basis of his race, and that he was terminated after notifying the City Council of his intent to file a complaint about the alleged disparate treatment.

This cause is before the court on Defendants' Motion for Partial Summary Judgment (Doc. # 20), which has been fully briefed and is ready for disposition.  Upon careful consideration of counsel's briefs, the relevant law, and the record as a whole, the court finds that Defendants' motion is due to be granted.

# I. JURISDICTION AND VENUE

Subject matter jurisdiction is exercised pursuant to 28 U.S.C. §§ 1331, 1343(a)(4), and 1367. The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations in support of both.

# II. STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (*per curiam*); Fed. R. Civ. P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

If the movant meets its evidentiary burden, the burden shifts to the nonmoving party to establish, with evidence beyond the pleadings, that a genuine issue material to each of its claims for relief exists. Fed. R. Civ. P. 56(e)(2); *Celotex Corp.*, 477 U.S. at 324; *Clark v.*

*Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  What is material is determined by the substantive law applicable to the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (*per curiam*) (internal quotation marks and citation omitted).

A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor.  *Greenberg*, 498 F.3d at 1263; *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001).  However, if the evidence on which the nonmoving party relies "is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50 (citations omitted).  "A mere 'scintilla' of evidence supporting the [nonmovant's] position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party," *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990), and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and do not suffice to oppose a motion for summary judgment.  *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (*per curiam*).  Hence, when a plaintiff fails to set forth specific facts supported by appropriate evidence sufficient to

3

establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex Corp.*, 477 U.S. at 323

### III. FACTUAL BACKGROUND

The facts, construed in the light most favorable to the non-movant, are as follows.

### A.     Mr. Blevins' Appointment

On May 17, 2005, Mr. Davis, the City Manager for the City of Tuskegee, circulated a memorandum to the members of the Macon County Bar Association seeking "applications and resumes for permanent appointment to the positions of Tuskegee Municipal Court Judge and Tuskegee Municipal Court Prosecutor for the term of the current administration." (May 17, 2005 Mem. (Doc. # 20, Attach. 4, Ex. 3).) One of the listed qualifications for the position included "the ability and knowledge to supervise and consult with the City Administration regarding the policies and affairs of the municipal court." (May 17, 2005 Mem.)

On October 25, 2005, after receiving applications and conducting interviews (*see* Blevins Dep. 69 (Doc. # 30, Ex. 2)), the City Council passed Resolutions Nos. 2006-4 and 2006-5, appointing Mr. Blevins (a white male) as municipal prosecutor[1] and Albert C. Bulls, III (a black male) as municipal judge. (Oct. 25, 2005 City Council Mins. (Doc. # 20, Attach. 4, Ex. 4).) Both were appointed "for the period beginning October 25, 2005 and serving at the pleasure of the City Council." (Oct. 25, 2005 City Council Mins.) On November 3,

_____

[1] The parties use the terms "municipal prosecutor" and "city prosecutor" interchangeably. For consistency, the court will use the former.

2005, Mr. Davis notified Mr. Blevins via letter that the majority of the City Council had voted to appoint Mr. Blevins as municipal prosecutor.  (Nov. 3, 2005 Letter from Davis to Blevins (Doc. # 30, Ex. 5).)  The letter also informed Mr. Blevins that his appointment would be "effective immediately" and would continue "for the remaining tenure of this council[,] which ends September 30, 2008."  (Nov. 3, 2005 Letter from Davis to Blevins.)

## B.   Health Insurance

Mr. Blevins testified in his deposition that shortly after his appointment, he was informed that "[he] could get . . . health insurance," and that "[f]or the next couple of months, [he] believed [he] was covered under the City's insurance."  (Blevins Dep. 28-29.) Sometime in early January 2006, after receiving notice from Blue Cross that he did not, in fact, have insurance through the City, Mr. Blevins contacted Mr. Davis, who informed Mr. Blevins that as municipal prosecutor, "[he] could not have the coverage."  (Blevins Dep. 32.) According to Mr. Davis, the City of Tuskegee has a policy that precludes individuals appointed by the City Council to City positions from participating in the City's health insurance plan with Blue Cross and Blue Shield of Alabama.  (Davis Dep. 100-01 (Doc. # 20, Attach. 4, Ex. 5).)  When Mr. Blevins mentioned to Mr. Davis that Judge Bulls had insurance through the City, Mr. Davis told Mr. Blevins that "[Judge] Bulls shouldn't have it, either, and that it was going to be immediately terminated."  (Blevins Dep. 32.)  Judge

Bulls insurance through the City was terminated on March 1, 2006.[2] (Blue Cross Enrollment Listing 3 (Doc. # 30, Ex. 7); Davis Dep. 103-05.)

## C.   Conflicts Between Mr. Blevins and Judge Bulls

Beginning in July 2006, conflicts arose between Mr. Blevins and Judge Bulls, resulting in several letters on which the City Council was copied.  In two such letters, Judge Bulls addressed concerns regarding Mr. Blevins' alleged inappropriate courtroom conduct, poor relationships with local attorneys, and failure to attend an appeal hearing.  (Aug. 21, 2006 Letter from Bulls to Blevins (Doc. # 20, Attach. 4, Ex. 11-A); Aug. 29, 2006 Letter from Bulls to Martin[3] (Doc. # 20, Attach. 4, Ex. 11-C).)  In response, Mr. Blevins accused Judge Bulls of making "defamatory" statements and raised concerns regarding Judge Bulls' alleged failure to "implement guidelines" ensuring that the municipal prosecutor receive notice of pending appeals and hearings.  (Aug. 23, 2006 Email from Blevins to Davis (Doc. # 20, Attach. 4, Ex. 11-B); Oct. 3, 2006 Letter from Blevins to City Council (Doc. # 20, Attach. 4, Ex. 11-D).)

---

[2] In his October 25, 2007 interrogatory responses, Mr. Davis stated that Judge Bulls' health insurance was terminated "as of September 1, 2007."  (Pl.'s Resp. to Interrogs. 3 (Doc. # 30, Ex. 1.) However, after receiving the health insurance records, Defendants submitted an "Amended Response to Plaintiff's Second Set of Interrogatories," which corrected the date on which Judge Bulls' health insurance was terminated.

[3] Judge Ray D. Martin is a circuit judge in Dadeville, Alabama.  (Doc. # 20, Attach. 4, Ex. 11-C.)

**D.**    **Mr. Blevins' Termination**

On February 27, 2007, during a regularly-scheduled meeting and after discussing issues involving the municipal court, the City Council voted to appoint Keith Thomas, a white male, as the municipal prosecutor, thereby terminating Mr. Blevins' appointment. (Feb. 27, 2007 City Council Mins. 10-11 (Doc. # 20, Attach. 4, Ex. 12); Davis Aff. ¶ 3 (Doc. # 20, Attach. 4, Ex. 8).)   Mr. Davis notified Mr. Blevins via letter of his termination on March 1, 2007.  (Mar. 1, 2007 Letter from Davis to Blevins (Doc. # 20, Attach. 4, Ex. 13) (stating that "on February 27, 2007, the majority of the City Council voted to appoint Attorney Keith Thomas as the Prosecutor with the Municipal Court effective March 27, 2007").)

On that same day – March 1, 2007 – Mr. Blevins sent a letter to Mr. Davis stating that he had received information indicating that "Judge Bulls continues to maintain health insurance coverage through the City," that the denial of health insurance coverage appeared to be racially motivated, and that he planned to file a formal complaint with the Equal Employment Opportunity Commission ("EEOC") for racial discrimination.  (Mar. 1, 2007 Letter from Blevins to Davis (Doc. # 30, Ex. 3).)

**E.**    **Procedural History**

Shortly thereafter, Mr. Blevins filed suit in the Circuit Court of Macon County, Alabama, alleging fraud in the inducement, breach of contract, and negligence.  After voluntarily dismissing the state action, and receiving his right-to-sue notification from the

EEOC, Mr. Blevins filed the instant action.  He alleges disparate treatment and retaliation in violation of Title VII, as well as state-law claims for misrepresentation, breach of contract, negligence, and discrimination.  Defendants move for summary judgment on the two federal claims, and request that the court dismiss all pending state-law claims.

## IV.  DISCUSSION

Counts I and II of the complaint allege disparate treatment and retaliation in violation of Title VII.  Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Title VII further prohibits retaliation for opposing "any practice made an unlawful employment practice by this subchapter."  42 U.S.C. § 2000e-3(a).

Although the statute refers to "individual[s]," "only those plaintiffs who are 'employees' may bring a Title VII suit."  *Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1242 (11th Cir. 1998); *see also Birch v. Cuyahoga County Probate Court*, 392 F.3d 151, 157 (6th Cir. 2004) ("Notwithstanding the statutory language that refers to 'individual[s],' courts have limited Title VII's protections to individuals who are 'employees.'").  Title VII excludes from the definition of "employee"

> any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, **or an appointee on the policy making**

8

**level** or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office.

42 U.S.C. § 2000e(f) (emphasis added).

Defendants contend that Mr. Blevins, as a municipal prosecutor, falls within the "appointee on the policymaking level" exemption and, thus, may not bring suit under Title VII. Defendants further assert that even if the court finds that Mr. Blevins was an "employee" as defined under Title VII, Defendants are nevertheless entitled to summary judgment on the merits of Mr. Blevins' Title VII claims. Because the court finds that the Mr. Blevins was not an "employee" under Title VII, it declines to address Defendants' latter arguments.

As an initial matter, neither party disputes that Mr. Blevins was an "appointee" as contemplated by the exemption.[4] The City Council minutes from the October 25, 2005 meeting confirm as much. (*See* Oct. 25, 2005 City Council Mins. ("Jerry Blevins is hereby appointed Municipal Prosecutor of the City of Tuskegee.").) The parties do dispute, however, whether the municipal prosecutor is a position on the "policymaking level."

Neither party provides any binding authority analyzing this specific issue, and the court is aware of no Eleventh Circuit case law directly on point. However, as Defendants point out, several other circuits have delineated numerous factors relevant to the analysis. Those factors include: (1) "whether the [appointee] ha[d] discretionary, rather than solely

---

[4] Mr. Blevins disputes who had the power to appoint him, but not the fact of his appointment. (*See* Pl.'s Resp. Br. 9 (contending that City Manager Davis, and not the City Council, had the power to appoint Mr. Blevins).)

administrative powers"; (2) "whether the [appointee] serve[d] at the pleasure of the appointing authority"; and (3) "whether the [appointee] formulate[d] policy." *Stillians v. Iowa*, 843 F.2d 276, 278 (8th Cir. 1988) (analyzing the definition of "employee" in the ADEA[5] ), *abrogated on other grounds*; *see also Costenbader-Jacobson*, 227 F. Supp. 2d at 309 (analyzing the definition of "employee" in Title VII).[6]

Defendants, relying on this list of factors, maintain that the Tuskegee Municipal Court Prosecutor is a position of policymaking authority.[7]   The court agrees.

---

[5] The ADEA and Title VII use the same definition of "employee," *see* 29 U.S.C. § 630(f); thus, ADEA cases analyzing the "appointee on the policymaking level" exemption can be applied to Title VII cases.  *See Costenbader-Jacobson v. Pennsylvania*, 227 F. Supp. 2d 304, 309, n.2 (M.D. Pa. 2002).

[6] In determining whether one is a policymaker for Title VII purposes, courts have also applied the factors used in the First Amendment context.  *See Guy v. Illinois*, 958 F. Supp. 1300, 1305 (N.D. Ill. 1997) ("[T]he analysis is the same [in Title VII cases] as that applied in the context of patronage ban exemptions.").  Thus, the court may consider the following additional factors: "whether the appointee is empowered to act and speak on behalf of a policymaker, particularly an elected official," and "whether the appointee is exempt from civil service protection, controls other employees, and has some technical competence or expertise."  *Costenbader-Jacobson*, 227 F. Supp. 2d at 309 (citing *Vezzetti v. Pellegrini*, 22 F.3d 483, 486 (2d Cir. 1994)).

Defendants maintain that Mr. Blevins was exempt from civil service protection and that he had, as a licensed practicing attorney, at least "some technical competence or expertise."  However, the parties do not address whether Mr. Blevins was "empowered to act and speak on behalf of a policy-maker," or whether he "control[ed] other employees."  Thus, because those factors have not been fully fleshed out, and because the first three factors weigh heavily in favor of exemption, the court finds that the additional "First Amendment factors" do not affect the outcome in this case.

[7] Rather than addressing the factors listed above, Mr. Blevins appears to analyze the *personal staff* exemption to the Title VII definition of "employee."  Because Defendants do not move for summary judgment on this basis, and because this exemption clearly does not apply to the case at hand, the court does not address Mr. Blevins' arguments related to the personal staff exemption.  However, to the extent there are arguments on point interspersed throughout Mr. Blevins' discussion of the personal staff exemption, those arguments are addressed below.

A.     **Discretionary Versus Administrative Powers**

The evidence clearly shows that Mr. Blevins had discretionary power as the municipal prosecutor.  He testified in his deposition that he "[m]ade all kind[s] of decisions," including "what cases to prosecute; how strict to prosecute; which cases to informally adjust; which cases were filed; [and] which cases were not filed."  (Blevins Dep. 21.)  Mr. Blevins contends in his response brief that "only in a few instances did he even have input as to the bringing or modification of charges sought."  (Blevins Resp. Br. 11.)  However, courts have made clear that the proper inquiry relates not to the powers exercised by the plaintiff, but to the powers inherent in the position occupied by the plaintiff.  *See Heck v. City of Freeport*, 985 F.2d 305, 309 (7th Cir. 1993).  Thus, even if the court were to accept Mr. Blevins' contradictory and unsupported contention that he rarely had input regarding "bringing or modification of charges sought," the court would nonetheless find that by occupying a position with inherent discretionary powers, Mr. Blevins had discretionary authority, whether he chose to exercise that authority or not.  *See Costenbasder-Jacobson*, 227 F. Supp. 2d at 310 ("By the nature of her position, Plaintiff had genuine discretionary and policymaking powers.  Whether she exercised them or not, these powers went hand in hand with the position to which she was appointed.").  Accordingly, the court finds that this factor weighs in favor of Defendants.

**B.**     **Serving at the Pleasure of the Appointing Authority**

As to the second factor, Mr. Blevins maintains that he did not "serve at the pleasure of the appointing authority" (here, the City Council) because "he was hired by Mr. Davis for a specific term" and because he "had almost no contact with the City Council."  (Blevins Resp. Br. 10 (Doc. # 29).)  Mr. Blevins contends that the letter from Mr. Davis confirming Mr. Blevins' appointment established a set term of employment, and that the City Council did not have the authority to terminate his appointment prior to the completion of this term. (*See* Nov. 3, 2005 Letter from Davis to Blevins (stating that Mr. Blevins' appointment would be "effective immediately" and would continue "for the remaining tenure of this council[,] which ends September 30, 2008").)  However, the minutes from the October 25, 2005 City Council meeting state that Mr. Blevins was appointed "for the period beginning October 25, 2005 *and serving at the pleasure of the City Council*." (Oct. 25, 2005 City Council Mins. (emphasis added).)  It is unclear whether or to what extent Mr. Davis' letter is inconsistent with the City Council meeting minutes, and Defendants do not address this point in their reply brief.   Inconsistencies notwithstanding, Mr. Blevins acknowledges that he was accountable to the City Council, (*see* Blevins Resp. Br. 11 ("Blevins was not only accountable to Davis, but also to the City Council.")), a point further supported by his appearance before the City Council to interview for the municipal prosecutor position and to address his dispute with Judge Bulls (Blevins Dep. 69).  Moreover, it was the City Council that voted to terminate his appointment (albeit implicitly, by appointing a new municipal

12

prosecutor).  (Feb. 27, 2010 City Council Mins. 10-11.)  On balance, and construing the evidence in the light most favorable to Mr. Blevins, the court finds that this factor is neutral – weighing in favor of neither party.

**C.    Formulating Policy**

It is undisputed that Mr. Blevins formulated policy as part of his job as municipal prosecutor.  The memorandum seeking applications for municipal prosecutor listed as one of the qualifications "the ability and knowledge to supervise and consult with the City Administration regarding the policies and affairs of the municipal court."  (May 17, 2005 Mem.)  Further, when asked during his deposition, "Did you make policy as far as your position within the City?," Mr. Blevins responded, "Yes." (Blevins Dep. 21.)  He then stated that he formulated policy "[o]n what cases to prosecute; how strict to prosecute; which cases to informally adjust; which cases were filed; [and] which cases were not filed."  (Blevins Dep. 21.)  The fact that he later stated that he was not sure whether what he did "constituted policy-making legally," (Blevins Dep. 22), does not change the result.  Mr. Blevins was unequivocal in stating what his job entailed, and his interpretation of the law cannot be used to create a factual dispute.  The job announcement further supports the policymaking nature of the position.

In sum, the court finds that Mr. Blevins was acting as an appointee on the policymaking level when the alleged discrimination occurred.  *See Guy*, 958 F. Supp. at 1305 (holding that an assistant state attorney was an appointee on the policymaking level);

13

*cf. Branti v. Finkel*, 445 U.S. 507, 519 n.13 (noting the "broad[] public responsibilities of an official such as a prosecutor").  As such, Mr. Blevins was not an "employee" for purposes of Title VII, and Defendants' motion for summary judgment is due to be granted on this basis.

## V.  CONCLUSION

Based on the foregoing, Defendants' Motion for Partial Summary Judgment on Mr. Blevins' Title VII claims (Doc. # 20) is GRANTED.  Having dismissed all claims over which the court has original jurisdiction, the court declines to exercise supplemental jurisdiction over the remaining state-law claims.  *See* 28 U.S.C. § 1367(c)(3).  A final judgment will be entered.

DONE this 18th day of June, 2010.

　　　　　　　　　　　　　　　/s/ W.  Keith Watkins
　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE